## State *versus* John Hascall.

It is sufficient, *prima facie*, on an indictment for perjury, to show that the person by whom the oath was administered, was an acting magistrate ; and the evidence of the individual himself may be received for that purpose. And his evidence may also be received, in connexion with his original certificate of the administration of the oath, to show, that the oath to a complaint was administered by him, to the respondent, without the production of a copy of record.

Where an assignment of perjury is set out in one entire averment, the whole must be proved, but where there are several distinct assignments, proof of any one of them is sufficient to support the indictment.

Evidence is admissible to show that the motives which actuated the prisoner, at the time of committing the alleged offence, were corrupt ; as, for instance, to show that when he swore to a complaint against the prosecutor, ostensibly to procure sureties of the peace, his object was, in fact, to coerce that person to settle a civil suit ; and for this purpose evidence may be received, that the prisoner, at or near the time that he instituted proceedings against the prosecutor, caused another complaint to be made, and a warrant issued against a brother of the prosecutor, and that he placed both warrants in the hands of an officer, with instructions not to serve them if the civil suit was settled, otherwise to make service.

It is not a ground for a new trial, that the court omitted to instruct the jury as to the degree of evidence necessary to convict of perjury, where no question of that nature was raised at the trial.

That one of the jury, who tried the case was drawn more than twenty days before the sitting of the court, furnishes no ground for a new trial, no exception having been taken on that account until after verdict.

Affidavits of the jurors may be received to show that certain papers, calculated to have an influence upon the case, and which were alleged to have been exhibited to some of the jury, out of court, before the trial, were not in fact shown to them, or read in their hearing.

But where there is evidence of improper conduct by a party, or prosecutor, in its nature calculated to influence the trial, the affidavits of jurors cannot be received, to show, in general terms, that they founded their verdict upon the law and evidence laid down and given in on the trial, and upon that only.

Evidence of improper conduct by a party, out of court, calculated to have an influence upon the trial, such as exhibiting papers at publick places where members of the jury boarded, would be a sufficient cause for setting aside a verdict in a civil case, and the court may, in its discretion, set aside a verdict in a criminal cause, upon evidence of like conduct on the part of the prosecutor.

INDICTMENT for perjury, alleged to have been committed at Plaistow, in the county of Rockingham, before Benjamin George, Esq. a justice of the peace, on the the 21st January, 1830, in swearing that a certain complaint, made by said Hascall, against one Cyrus Fitts, for the purpose of obtaining sureties to keep the peace, was true.

The indictment alleged, that said Hascall, upon his oath, in his complaint aforesaid, " falsely, wickedly, and corruptly, did say, depose, and swear," among other things, that said Cyrus Fitts, on the 28th of November, 1829, " did threaten to do him the said John Hascall some bodily hurt, insomuch that the said John Hascall was afraid that he, the said Cyrus Fitts, would beat, wound, maim, or kill him the said John Hascall, or do him the said John Hascall, some bodily harm," " whereas, in truth and in fact, said Cyrus Fitts did not, on the 28th of November, 1829, or at any other time, threaten to do him the said John Hascall any bodily hurt, and whereas in truth and in fact, the said John Hascall was not afraid that he, the said Cyrus Fitts, would beat, wound, maim, or kill him the said John Hascall, or do him the said John Hascall, any other bodily harm."

At the trial, C. C. Pleas, March term, 1833, the original complaint was exhibited, with a certificate of the oath thereon by Benjamin George, as a justice of the peace, and said George, being called as a witness for the

government, testified, that at the time the complaint was made, he was a justice of the peace, and had acted as such, and that the prisoner swore to the complaint before him. There was no other evidence that said George was a justice of the peace. On this complaint a warrant was issued by said George.

The government offered evidence, that on the 20th of January, 1830, the prisoner made a complaint to Eliphalet Hunt, Esq. against Hiram Fitts, a brother of said Cyrus Fitts, for perjury ; that Hunt drew a complaint against said Hiram, and that one Richardson swore to it, upon which said Hunt issued a warrant—that on the 21st of January, the prisoner delivered both warrants to an officer, and at the same time delivered to him a writ, founded on a note purporting to be made payable to the prisoner by said Cyrus Fitts, and to have been endorsed by the prisoner to one Blashford, of Connecticut, and directed the officer, if Fitts settled the civil suit, not to serve the warrants ; and it was proved, Cyrus Fitts refusing to settle, that both Cyrus and Hiram were arrested on the warrants—that Cyrus finally settled the civil suit, and that the prosecution against him was immediately abandoned—that Hiram was taken before a magistrate, and that the prisoner went out, for the purpose, as he said, of procuring his witnesses, saying to the justice that if he did not return in fifteen minutes, he might acquit said Hiram—that the prisoner did not return, and said Hiram was discharged.

To the admission of this evidence the counsel for the prisoner objected, but the court overruled the objection.

It was proved by several witnesses, introduced on the part of the prisoner, that Cyrus Fitts had threatened him, and this was not denied, or in any way disproved on the part of the state. But six witnesses, introduced on the part of the state, testified to the prisoner's declarations, made about the time the perjury was alleged to have been committed, " that he was not afraid of all the

Fitts's by night or by day ;" and to others he declared that he should not have made the complaint if Fitts had settled a dispute they had about a note.

The jury were instructed, generally, that if they had any doubt of the guilt of the prisoner they must acquit him, but if there was no reasonable doubt in their minds they ought to convict him, and a verdict of guilty having been returned,

*I. Bartlett* and *James Bell*, in behalf of the prisoner, moved for a new trial. 1. Because there was no sufficient evidence that George was a justice of the peace, and because the pendency of the prisoner's complaint before him was proved by his testimony, without the production of any record. 2. On the ground that the assignment of the perjury was not sustained by the evidence, the prisoner having disproved part of the allegation, by proving that Fitts had threatened him. 3. On account of the admission of evidence relating to the complaint against Hiram Fitts. 4. Because the court left the cause with the jury without any instruction as to the degree of evidence necessary to make out the crime of perjury.

They also offered evidence, that one of the jurors who tried the cause was drawn more than twenty days before the sitting of the court—and evidence tending to show that certain papers, calculated to make an unfavorable impression upon the jury, had been exhibited and read by Cyrus Fitts, the prosecutor, at several publick places in Portsmouth during the week of the trial, and just before it, in the presence of several persons ; and that some of the jurors boarded at those places, and part of the witnesses believed that two of the jurors heard the papers read.

They cited 7 Pick. 177, *Commonwealth* v. *Briggs ;* 2 Chitty's Cr. L. 164 ; 1 Starkie's Rep. 521 ; 2 Camp. 134, *Rex* v. *Leefe ;* 9 East, 157 ; 7 Dane, 86 ; 5 D. & E. 311 ; 17 Mass. 538 ; 5 B. & C. 254, *King* v. *Tremearne ;* 4 D. & E. 473 ; Cro. Eliz. 256. Also 3 Bro. & Bing. 272,

*Coster* v. *Merest*; 4 N. H. Rep. 116, *Tyler* v. *Stevens*; 4 Binney, 155, *Cluggage* v. *Swan*; 4 Bos. & Pul. 329, *Owen* v. *Warburton*; 2 N. H. R. 474, *Perkins* v. *Knight*.

*Sullivan*, A. G. for the state, offered the affidavits of all the jurors, that they did not, at any time before or during the trial, hear any paper read like the one mentioned in the affidavits on the part of the prisoner, nor did they read or hear read, out of court, any paper whatever, in any way relating to the prisoner, or his character, or the character of Fitts, before the return of their verdict—and that they were induced to agree to the verdict, from a consideration of the law and evidence given in at the trial, and from that only.

PARKER, J. The motion of the prisoner for a new trial rests, in the first place, upon the want of evidence that the individual who acted as a magistrate, and before whom the perjury is alleged to have been committed, was a competent magistrate; and because, if he was so, the pendency of the prisoner's complaint before him was not proved by competent evidence.

Justices of the peace have a general jurisdiction to receive complaints, administer the proper oaths thereon, and issue warrants for the arrest of offenders, and it is sufficient, in the first instance, to prove the person an acting magistrate, without producing his commission. 2 Chitty's Cr. L. 165 [313 ;] 2 Stark. Ev. 273; 1 East. P. C. 315, *Gordon's case*; 3 Camp. 432, *Rex* v. *Verelst*; 4 D. & E. 366, *Berryman* v. *Wise*; 2 Carr. & P. 215, *Snow* v. *Peacock*; 3 Johns. R. 431, *Potter* v. *Luther*; 12 Johns. 296, *Reed* v. *Gillet*.

The fact that George had acted as a magistrate was *prima facie* evidence of his being such, and we see no objection to receiving this evidence from himself. It was certainly as much within his knowledge as in that of any other person, and we discover no good reason why he should be an incompetent witness to the fact; and as no evidence was offered to control, or invalidate his testimo-

ny upon this point, we think the fact sufficiently proved.

As to the other part of this objection—it is well known that where a complaint of this nature is exhibited and sworn to before a justice, no entry is usually made upon his docket. The warrant may be returned before another magistrate, and wherever it is returned it is entered, and an examination had, and the proceedings are entered up of record by the magistrate who takes the examination. In this case the original complaint was exhibited in evidence, with the original certificate of George that it was sworn to before him, and he testified, moreover, that Hascall swore to that complaint before him, on the day specified in the certificate of the oath entered upon it.

On the supposition that it was the duty of George to have entered upon his docket some record of the oath having been taken before him, that record could not have been more satisfactory than the record of the oath entered by him on the complaint itself, and the original papers thus produced, and verified, are certainly quite as conclusive evidence of the fact, not to say more so, than a transcript of any entry upon his docket could have been. His evidence was proper, moreover, to show the identity of the party. This exception therefore must be overruled. 3 Stark. Ev. 1138 ; 2 Camp. 508, *Rex* v. *Benson* ; 2 Burr. 1189, *Rex* v. *Morris* ; 1 Leach, 50, S. C. Bull. N. P. 329.

The next objection is, that on the whole evidence the assignment of the perjury was not sustained ; part of the assignment, it is said, having been disproved by the defendant.

It was proved on the part of the state, that Hascall swore to all which the indictment sets out as having been sworn by him. 2 Camp. 134, *Rex* v. *Leefe* ; 1 Chitty's C. L. 454, [557.]

But there is no doubt that it was distinctly proved, on the part of the prisoner, that Fitts had threatened him, so that one part of what he swore was true ; and if the

assignment of the perjury had been set out in one entire averment this exception must have been sustained.

Such however is not the fact. The averment that Fitts had not threatened the prisoner, is, of itself, entire, and distinct from the averment that Hascall was not afraid, and one might well be disproved, and the other sustained. It is settled that if any one distinct assignment of perjury be proved the respondent ought to be convicted. 3 Stark. Ev. 1145 ; 2 Lord Raym. 886, *Regina* v. *Rhodes;* 2 Chitty's C. L. 164, [312.] This exception therefore cannot avail the prisoner.

Another objection is, that evidence relative to the complaint against Hiram Fitts was improperly admitted. But the answer to this is that it was introduced, in connexion with the other complaint and the writ, to show the motive with which the prisoner swore to the complaint in question—to show that in this proceeding he had another object in view than the lawful one of procuring sureties of the peace, and thus to disprove the allegation in his complaint that he was afraid of Fitts.

That he at the same time procured another warrant to be issued against the brother of Cyrus Fitts—that both were placed together in the hands of an officer, who was directed not to proceed with them in case the civil suit was settled—and that, such suit being settled, both were abandoned, is a strong corroboration of the evidence of the witnesses, who swore to the declarations of the prisoner that he was not afraid of Fitts, by showing another purpose which he was attempting to effect. All the means he took to accomplish this purpose are directly connected, and those means, and the abandonment of them when the purpose was accomplished, were admissible in evidence, to show that his motives in taking the oath in question were corrupt, and to disprove the fears set forth in his complaint. 3 Stark. Ev. 1145 ; 3 Carr. & P. 498, *Rex* v. *Munton.*

He connected these warrants by their delivery togeth-

er, and the directions he gave respecting them, and it is not for him to complain that they are introduced in evidence, in the connexion which he himself framed. This exception therefore is overruled.

The next objection, that the court left the evidence to the jury without any instruction as to the degree of evidence necessary to convict of the crime of perjury, must share the same fate. The course of the trial was not such as to call for such an instruction. Six witnesses testified to the declarations of the prisoner that he was not afraid, and they stood unimpeached. The degree of evidence, necessary to convict of this particular crime, did not therefore come in controversy. If the respondent's counsel had contended that these witnesses were severally not worthy of credit, and that the evidence of one was not sufficient, and had requested the court to instruct upon this point, or had otherwise raised the question, an instruction upon it should have been given, although an omission, even after a request, to give an opinion upon a point of law relevant to the issue, has been held, under certain circumstances, to furnish no ground for reversing the judgment. 3 Cranch, 298, *Douglas* v. *McAllaster*; 4 Cranch, 61, *Smith* v. *Carrington.*

But in this case no such request appears to have been made, nor any point respecting the degree of evidence suggested, until after the verdict, and it is not a ground for setting aside a verdict, that the court omitted an express direction upon a point not raised at the trial. 11 Wheat. 277, *Armstrong* v. *Toler*; 5 Pick. 220, *Wait* v. *Maxwell.*

No instruction that the degree of evidence was insufficient could have been given, if it had been requested. 1 Chitty's C. L. 458, [563]; 1 Phil. Ev. 108, [113;] 6 Cowen, 118 *Woodbeck* v. *Keller.*

The jury were directed, generally, that if they had a reasonable doubt they must acquit, which was all that the present case required.

Another exception is, that one of the jurors who tried the case was drawn more than twenty days before the term when the venire was made returnable, and this appears to be the fact.

This would have been a sufficient exception against that particular juror, if it had been taken before the trial. But it is now too late. The venires are uniformly returned into court, and any party can have access to them and examine the returns, before his case comes on for trial. If he omits to do this he must be considered as waiving an exception of this character.

If the exception was of a nature that he could not have availed himself of it at an earlier stage, by the exercise of due diligence, it might be otherwise, but that is not the case here, and the party cannot be suffered to lie by, take the chance of the verdict, and then avail himself of an objection to a juror, the evidence of which was on file with the clerk prior to the trial. 1 Pick. Rep. 38, *Amherst* v. *Hadley* ; 8 Barn. & C. 417, *King* v. *Sutton*.

The only remaining objection is, that certain papers, calculated to make an unfavorable impression upon the jury, were exhibited by Fitts, the prosecutor, at several public places, and read in the hearing of jurors, during the term, and before the trial.

There can be no doubt that the papers have a tendency to produce an impression unfavourable to the prisoner. Several witnesses swear to the exhibition of these papers, and two say, that in their belief they were read in the hearing of two of the jurors, but they do not give the names of the jurors who, as they believe, heard them read.

To rebut this evidence, the counsel for the State has offered the affidavits of each member of the jury, that they did not hear any such papers read at any time before the trial, nor did they read, or hear read, out of court, any paper whatever, in any way relating to the prisoner, or his character, or the character of the prosecutor, before

the return of the verdict ; and that they were induced to agree to the verdict, from a consideration of the law and evidence given in at the trial, and from that only.

The prisoner's counsel have objected to the reception of these affidavits in evidence, and the first question is whether they can be considered.

*Coster* v. *Merest*, 3 Bro. & Bing. 272, cited by the counsel, is in point for them, if it can be considered as sound law. But among the numerous, and somewhat conflicting cases, respecting receiving the testimony of jurors, no single case can be considered as settling a question of this nature. Vide 2 Green. 41, *cases collected in note* ; 1 Wendell, 297, *People* v. *Columbia Common Pleas* ; 6 Cowen, 53, *Ex parte Caykendoll* ; 5 Cowen, 106, *Sargent* v. —— —— ; 2 Green. 37, *Little* v. *Larrabee* ; 8 Pick. 359, *Ferrill* v. *Simpson* ; 5 Conn. Rep. 348, *State* v. *Freeman, and auth. post.*

The case *Coster* v. *Merest* was cited 4 N. H. R. 116, *Tyler* v. *Stevens* ; but it was merely by way of illustrating the decision in the latter case, the point to which it goes not having arisen there.

It is evident that cases may occur, where an attempt is made to impeach a verdict, upon evidence founded in mistake, misapprehension, or perhaps in fraud. To exclude the testimony of jurors, therefore, in all questions affecting their verdict, would neither be just to the parties, or the jury ; and, upon a full consideration of this point, we hold that the affidavits of the jurors are admissible, in this case, to prove that they did not read, or hear any such papers read, before their verdict. 5 Pick. 296, *Hix* v. *Drury* ; 3 Johns. Rep. 252, *Hackley* v. *Hastie* ; 3 Green. 204, *Taylor* v. *Greeley* ; ditto, 92, *Haskell* v. *Bechet.* And that they are not admissible to show, in general terms, that they agreed to the verdict solely from the law and evidence given at the trial. 5 N. H. Rep. 93,

*Page* v. *Wheeler* ; 5 Mass. Rep. 405, *Whitney* v. *Whitman* ; 14 Mass. 245, *Bridge* v. *Eggleston.*

These affidavits, then, to that extent, are to be weighed against those produced on the part of the prisoner.

Had the affidavits on the part of the prisoner named any particular jurors who were present, and heard the papers read, there might be a question to be considered as to the weight of the testimony, whether they were heard by those jurors or not. But it is observable that no juror is designated as having heard these papers read, although it must probably have been in the power of the witnesses to do so, if they had the knowledge that they were read in the presence of two members of the jury, as they testify to their belief. The individuals are not only not named, but no description of them is attempted, nor any circumstances stated which can lead to any supposition which of the jurors were probably the individuals alluded to ; nor is it stated that they were unknown to the deponents.

All this is certainly suspicious, and we have no hesitation in holding, that under such circumstances, the affidavits of the several jurors, that they neither read, nor heard read any such papers before the verdict, stand wholly unimpeached, and that the prisoner has failed of making out this fact.

But this is not all. There are other witnesses on the part of the prisoner than those who testify that the papers in their belief were read in the hearing of two jurors, who swear that they were exhibited in several public places in Portsmouth during the term, and before the trial, and that some of the jurors boarded at those places and the places are designated in the affidavits.

This evidence is not disproved by the government, or in any way encountered, and it establishes the fact of conduct of a highly unwarrantable and reprehensible character on the part of one or more individuals connected

with this prosecution—conduct which was directly cal-
culated to have an improper influence upon the trial, and
of a character, if tolerated, to destroy the confidence of
the citizens in judicial tribunals, and the fair and impar-
tial administration of justice according to the laws of the
land.

We are not disposed to give any countenance to such
a procedure in this or any other case. It is of much
more importance that the community should feel assured
of the purity of the trial by jury, without bias, according
to law, than it is that John Hascall be now sentenced,
even if he be guilty.

The exhibition of these papers was very likely to make
their contents a subject of conversation, and the jury, or
some of them, may have heard some of the facts contain-
ed in them, though they neither saw, nor heard of the
papers themselves. It is not denied in their affidavits
that they did so, although it is not impossible that this
may have resulted from their attention not having been
called to this point. They state, generally, that they
were influenced by nothing except the law and evidence
given at the trial, but this we cannot consider.

It is sufficient for this case, that the exhibition of those
papers was highly improper, and that there is a possibil-
ity that some of the jury may have heard something of
the statements contained in them, in consequence of such
exhibition, before the trial was had.

We should not hesitate a moment to set aside a ver-
dict obtained by a party in a civil case, under such cir-
cumstances, 2 N. H. Rep. 474, *Perkins* v. *Knight* ; 13
Mass. 218, *Knight* v. *Freeport* ; and although it would be
partly to punish his misconduct, and the state is here
in no fault, yet we think the respondent in a criminal case,
where the law humanely presumes innocence, is, with-
in the discretion of the court, under circumstances like
the present, entitled to the benefit of the same rule. And

it is on this ground, and on this alone, that we set aside the verdict, and order the case transferred to the common pleas for a

*New trial.*