## TENNEY *vs.* EVANS.

When evidence is offered to impeach a verdict, on account of the improper conduct of the jurors, the affidavits of the jurors are admissible to exculpate themselves, and to sustain the verdict.

Evidence was offered to show that the foreman of a jury was partial to the plaintiff.—*Held*, that his own affidavit was admissible, to explain the conduct imputed to him, and to exculpate himself, by stating his conduct in the jury-room, and that the affidavit of another juror was admissible to the same effect.

Upon the production of evidence that the foreman of a jury had often said, before the trial, that the plaintiff would succeed, the foreman testified, and also offered other evidence, that those statements were made in jest, and that he had told the defendant also that *he* would lose the verdict. It appeared, also, that the plaintiff during the trial said he should not go home on a certain night, but intended to stay and see some of the jurors.—*Held*, that the verdict for the plaintiff should be set aside.

TROVER. After a trial and verdict for the plaintiff, the defendant moved that it be set aside, and that a new trial be granted, on account of the partial and improper conduct of the foreman of the jury ; and also because the plaintiff had tampered with some of the jurymen.

In support of the motion, the defendant laid before the

court the affidavits of four witnesses, to prove that the foreman had made declarations, before the trial, which evinced a feeling of partiality towards the plaintiff. There was also evidence that the plaintiff had said that the foreman would give him the case, if he could. To remove any unfavorable impression from this, the plaintiff offered evidence that the foreman had told him he would lose the case, and also that when he was jested with about the trial, he had said that the foreman would give him the case, and that he requested a witness to go to his house, and tell his wife that the case was safe ; but that this was said publicly, and because others were then jesting with him on the subject. The plaintiff also made affidavit that he did not know what the foreman's opinion was upon the case, until the verdict was returned. The foreman testified that he had told each party he would lose the case, but that he spake ironically and in jest, and that he knew nothing about the case, and had formed no opinion concerning it before the trial. One of the jurymen testified that the foreman expressed no opinion on the case, in the jury-room, until after a majority of the jurors had expressed themselves in favor of the plaintiff, and the foreman testified to the same effect.

One witness testified that the plaintiff told him, in the course of the trial, that he was not going home that night, but intended to stay and see some of the jurors.

*Perley*, for the plaintiff.

*Pierce & Fowler*, (with whom was *Bartlett*,) for the defendant.

GILCHRIST, J. The affidavits of the foreman, and of one of the jurors, have been laid before us for the purpose of removing any impression unfavorable to the verdict caused by the evidence offered to impeach it. The decisions on the admissibility of the evidence of jurors, in relation to their

verdict, are contradictory. In the case of *Saville* vs. *Lord Farnham*, 2 *Man. & Ry.* 216, Lord Tenterden asked Brougham, in a manner that implied a doubt, whether he could read the affidavit of a juryman? The learned counsel replied that " he could not, as to the conduct of the jury." He was then endeavoring to show that the jury did not concur in a verdict which had been entered for the defendant. In the case of *Rex* vs. *Wooller*, 2 *Stark. Rep.* 111, Lord Ellenborough said that the affidavit of a juror could not be received in any case. And it has been held that their affidavits could not be received to show that they misapprehended the instructions of the court, nor, where there is evidence of improper conduct by the jury or the prosecutor relating to the trial, to prove in general terms that their verdict was founded upon nothing but the law and the evidence. *Tyler* vs. *Stevens*, 4 *N. H. Rep.* 116 ; *State* vs. *Hascall*, 6 *N. H. Rep.* 352 ; nor to impeach the verdict, or prove a mistake, or any improper conduct by themselves. *Owen* vs. *Warburton*, 1 *Bos. & P. N. R.* 326 ; *Vaise* vs. *Delaval*, 1 *T. R.* 11 ; *Jackson* vs. *Williamson*, 2 *T. R.* 281 ; *Dana* vs. *Tucker*, 4 *Johns.* 487 ; *Jackson* vs. *Dickinson*, 15 *Johnson* 217 ; *Ex parte Caykendoll*, 6 *Cowen* 53 ; *Sargent* vs. ――――, 5 *Cowen* 106 ; *People* vs. *Columbia C. P.*, 1 *Wend.* 297 ; *Bridges* vs. *Eggleston*, 14 *Mass.* 245 ; *Hannum* vs. *Belchertown*, 19 *Pick.* 311 ; *Murdock* vs. *Sumner*, 22 *Pick.* 156 ; *Bishop* vs. *Williamson*, 8 *Greenl.* 162. And there are many other decisions to the same effect.

But where evidence has been introduced *aliunde* to impeach the verdict, by showing improper conduct of the jury, or attempts upon them by a party, the affidavits of jurors have been received in exculpation of themselves, and in support of the verdict. And for this there are substantial reasons. The motives and characters of jurors, who are bound by their oaths and consciences to a strict impartiality, and who perform so important a part in our jurisprudence, should not be assailed without giving them an opportunity for de-

Tenney *v.* Evans.

fence. " To exclude the testimony of jurors," as was said by Parker, C. J. in the *State* vs. *Hascall*, 6 *N. H. Rep.* 361, " in all questions affecting their verdict, would neither be just to the parties nor to the jury." Moreover, the trial by jury would soon fall into disrepute, if a verdict could be set aside upon evidence furnished solely by an unsuccessful party, who, if not corrupt and forsworn himself, has at least a strong interest to procure testimony unfavorable to the verdict, and whose friends and agents, of whom there is usually no lack, and from among whom his witnesses are usually drawn, may be presumed to share his feelings. And it has been held by this court that the affidavits of jurors were admissible to prove that papers calculated to have an influence upon the case, and which, it was alleged, were shown them, were not in fact shown them. *State* vs. *Hascall*, 6 *N. H. Rep.* 352. On a petition for a new trial, where it was averred that a juror was hostile to the petitioner, his affidavit was admitted to explain his feelings towards the petitioner. *Haskell* vs. *Becket*, 3 *Greenl.* 93. On a motion for a new trial, upon the ground that one of the jurors had prejudged the case, he may be heard to explain the language and conduct imputed to him. *Taylor* vs. *Greeley*, 3 *Greenl.* 204. Such evidence is admissible in exculpation of the jurors, and to support the verdict. *Dana* vs. *Tucker*, 4 *Johns.* 487. We have, therefore, read and considered the affidavit of the foreman, in connection with the other evidence ; and also the affidavit of one of the jurors, in relation to the foreman's conduct in the jury-room, as it corroborates the statement of the foreman, is in exculpation of him, and tends to support the verdict. There seems to be no reason why he should not be permitted to rebut the charge of partiality by his own evidence, tending to show that his acts were inconsistent with the existence of such a feeling ; and if he may do this, he may surely offer evidence in corroboration of his statements, from one who knows whether those statements are true.

But after giving its due weight to all the evidence, we are of opinion that the verdict should be set aside. The assertion of the foreman, repeatedly and positively made before the trial, that the plaintiff would succeed, connected with the plaintiff's expressed intention "to stay and see some of the jurors," indicate that these two persons had stronger sympathies on the subject of the trial, than should have existed. The evidence, notwithstanding the explanation given of it, shows a stronger feeling for the plaintiff than is consistent with the idea that all these declarations were merely in jest. And, after making all proper deductions from the evidence, and looking as leniently as possible upon the motives of the foreman, enough remains to render it doubtful whether he were a perfectly impartial juror,—a point upon which no doubt should ever exist. No one would willingly trust his life, or even his property, to a jury composed of twelve persons, each of whom had made similar declarations to those proved in this case. The foreman knew that he had said all these things; and it is somewhat suspicious that he did not ask to be excused from trying the case. The tendency of ignorant or unprincipled parties, "to see some of the jurors," as in this case; to tamper with them; to insinuate their own views of their controversies into the minds of weak or unsuspicious jurors, in the form of supposed cases; and the innumerable arts of which low cunning will avail itself to accomplish its dishonorable purposes, although it may thereby destroy all confidence in the administration of justice, cannot be too severely reprobated. The law anxiously strives to secure impartial jurors, by causing them to be selected by lot, and this renders all previous corruption nearly impossible. But it is a part of the price we pay for this benefit, that weak-minded and incompetent men will sometimes be selected; and no one can calculate in how short a time a weak man, or one careless of his grave duties, may be prejudiced or seduced into a wrong course. A greater evil could hardly befal society, than, with institutions like our own, the loss of the

public confidence in the entire impartiality of juries ; and the fearful consequences of such a result must ever be present to the minds of all who are called upon to determine questions like the present.

*Verdict set aside.*