# ROCKINGHAM,

## CILLEY v. BARTLETT.

In a writ of entry it appeared that the demandant's ancestor purchased a farm, upon which he permitted the tenant, his nephew, who was poor and intemperate, to reside for forty years, without paying any rent. While he was in possession, he exercised all the rights of an owner. But it appeared that during the whole of the period prior to the death of the ancestor, which happened in the year 1831, he acknowledged that he had no title to the land; that he always lived there at the mercy of Jacob Cilley, the ancestor, and after his death, at the mercy of his heirs. There was no evidence that the purchase was made for any other purpose than as an act of kindness to the tenant, in permitting him to reside there, nor that there was any parol gift of the premises to the tenant, nor that Jacob Cilley had any purpose of convenience of his own to subserve. *Held*, that it was erroneous in the court to instruct the jury that if they believed that the purchase was made for the use and benefit of the tenant, and the deed was made in Cilley's name for some purpose of convenience, which could not then be explained, it would be a fraud in the plaintiff to set up the legal title against the equitable right of the defendant, because there was no evidence in the case that Cilley purchased the land for any other purpose than to permit the tenant to reside there, the tenant having no equitable right, and no right whatever, except such as he derived from the generosity of Cilley.

There was no evidence in the case that the land was purchased or paid for by the tenant. The court charged the jury that if they were satisfied that there was a purchase of, and payment for the property by the tenant, they might presume that a deed once existed. *Held*, that this instruction was erroneous, because it authorized the jury to consider the evidence as tending to prove that the tenant paid for the land, when there was no evidence to that effect.

Where a tenant in possession of land exercises the ordinary rights of an owner of it, but acknowledges during the whole period of his occupation that the demandant or his ancestor owns the premises, such acknowledgments qualify

Cilley *v.* Bartlett.

and explain his acts, and if there is no evidence to the contrary, the demand-
ant is entitled to a verdict.

Where a party, while his case is on trial, in the presence and hearing of some of
the jurors, declares in positive terms that the testimony of a material witness
for his opponent is utterly false, such statements will be presumed to have
some effect upon the jury, and although the party swear that he did not know
that any of the jury were present, a verdict in his favor will be set aside.

WRIT OF ENTRY, in which the plaintiff claims 150 acres
of land in Nottingham, upon his own seizin, &c.   The case
was tried upon the general issue.

The plaintiff produced in evidence a deed from Samuel
Willey to Jacob Cilley, of the demanded premises, dated
on the nineteenth of September, 1807, and proved that
Willey was in actual possession of the premises before that
date.   It was shown that Jacob Cilley died in January,
1831, leaving six children, of whom the plaintiff, then seven
years old, was one, and that on a division of his estate,
within two years afterwards, the premises were assigned to
the plaintiff as part of his share, and that he had entered
upon and surveyed the premises soon after he became of
age.

On the part of the defendant it was shown that in the
latter part of 1807, or early in 1808, the defendant moved
his family upon the demanded premises, and has since re-
sided there.   And he offered evidence tending to show that
from that time to the death of Jacob Cilley, in 1831, and to
the commencement of this action, he had remained in pos-
session, exercising all the rights of owner, paying the taxes,
paying no rent, and none being ever asked, repairing build-
ings, building a new barn, which was very poor, however,
and in part built of the materials of the old one, and taking
away the old one, cutting and selling timber, in one or two
cases, about 1817, with the knowledge of Jacob Cilley, and
without objections, cutting and selling cord wood and coal
wood, making and selling charcoal, erecting and removing
fences, and running one of the lines of the farm, and that

Jacob Cilley, in his lifetime, never interfered with the farm, or his management of it.

A brother of the defendant testified, that before the purchase of these premises by Cilley, Cilley proposed to him to join in buying a farm for the defendant, which he declined, and that after this purchase was made, Cilley told him he bought it for the defendant.

On the part of the plaintiff, several witnesses were introduced to show the situation of the parties, and that until recently the defendant did not claim this property.

It appeared that Jacob Cilley was a man of wealth, and careful of his affairs, that the defendant was his nephew, that he was poor and intemperate, that his wife was a cousin of Jacob Cilley, and that Cilley and the defendant were intimate friends.

Samuel French testified that he lived with Jacob Cilley in 1807, and for some years after; that the defendant moved upon the premises soon after Cilley bought them; that he heard Cilley and the defendant talk about the place several times, but could not remember the conversations; he understood from the conversations that the premises were the property of Cilley; Cilley called the place his, and he never heard the defendant speak of it or claim it as his; he never knew the defendant to pay any rent.

Joshua Bean testified that he was collector of taxes in Nottingham in 1816, and the defendant was one of the selectmen, and that he told the selectmen, the defendant being present, that one person refused to pay his tax because it was too high, and because it was illegal, as the defendant was not a freeholder, and that the defendant's only answer was, " That was none of his business, all he had to do was to collect the tax;" that he offered to collect it upon an indemnity, but the board would give none; and it appeared that a part of the tax was abated and the balance paid the following year.

Ebenezer Butler testified that he was a deputy sheriff

from 1819 to 1834; that he had three small executions against the defendant, but was uncertain whether they issued from the court or were issued by a justice. He called on the defendant, who was then living on the premises, to collect them, and the defendant said "he had no property to pay them with, nothing he could get. He cared nothing about them."

John Dyer testified that in 1823, and until 1828, he assisted in repairing the old barn on the premises, and told the defendant the expense of repairing the old barn would be nearly as much as to build a new one; and he answered that the place did not belong to him, it belonged to some of the Cilleys. He expected to live on it his lifetime."

Henry Butler testified that less than thirty years ago Jacob Cilley and the defendant had a dispute at a tavern about politics; that the defendant was harsh, and Cilley got angry and said to the defendant, "I won't take such language. I have permitted you to live on my place, and I'll disinherit you, I'll turn you off;" that the defendant desisted, and observed after Cilley was gone that he "was sorry that he had irritated his uncle; he had been good to him; had treated him like a father."

Thomas Langley testified that in a conversation he had with the defendant, near the close of Major Cilley's life, in the highway, the defendant spoke of this farm, and said Major Cilley owned it; he thought the major would let him live on it his lifetime.

Joseph L. Cilley, son of Jacob Cilley, testified that soon after his father's death, he found the deed from Willey to him among his papers, and he asked the defendant what claim he had to the property? He replied: "He had no claim to it. He had lived there at his (witness) father's mercy, and lived there at their (the heirs') mercy."

The property was advertised for sale as part of Cilley's estate in 1833. The defendant attended the sale, claimed the property as his, and forbid the sale.

John Rundlett testified that he was a deputy sheriff from 1832 to 1835; that he had an execution against the defendant, and called at the premises to collect it. The defendant said " he did not own the place; it belonged to Mr. Cilley." He said " Cilley owned the place; it was poor, and he could not get much off it."

Samuel Burnham testified that he was present at a conversation between the parties about this suit. The plaintiff asked the defendant " if he ever told his (plaintiff's) father that he owned the farm." The defendant said, " No matter, he was not obliged to answer."

The court charged the jury that the plaintiff had produced the usual evidence of title, and was entitled to recover, unless the evidence produced by the defendant satisfied their minds that he had a better title to the property than that shown by Cilley; that as the defendant produced no deed of the property, he must satisfy them that he had a right to hold the property by virtue of some legal title. That he might do this by showing,

1. That he had occupied the premises for more than twenty years, adversely to the owner. That as to this, the law presumed every entry by a stranger upon the land of another, without written evidence of title, to be in subordination to the title of the owner, that is, by his consent and permission, and not adversely to him; that this presumption might be met by evidence of facts, inconsistent with such tenancy, and was weakened by long continued exclusive possession, with the knowledge of the legal owner.

2. That if the facts shown by the defendant led the jury to believe that the original purchase by Jacob Cilley was made for the use and benefit of the defendant, and the deed was made in Cilley's name for some purpose of convenience, which cannot now be explained, it would be a fraud in the plaintiff to set up the legal title against the equitable right of the defendant.

3. That if the facts proved satisfied them that there was

a purchase of, and payment for this property by the defendant, they could presume that a deed had been made agreeably to such contract, which is now lost. That as to this point they would recollect that there was no evidence that the defendant had ever alleged any such deed, which was a circumstance hardly reconcilable with such presumption.

The jury were instructed that they might consider the whole evidence of what was done and said together, and if upon the whole evidence they believed that it was more probable and reasonable to believe that the defendant occupied the premises merely by the permission of Major Cilley, it was their duty to find their verdict for the plaintiff. But if upon the whole evidence they believed that the manner of the defendant's occupation was irreconcilable with the idea of a tenancy, or occupancy, by mere permission of Cilley, and that it was more probable and reasonable to believe that the defendant was in fact the owner of the property, they might find their verdict for the defendant, if upon the evidence they believed him entitled in either of the modes suggested.

The court declined to instruct the jury, as the plaintiff desired, that if they believed as the plaintiff's evidence tended to show, that the defendant, from the time he moved upon the demanded premises till after the death of Jacob Cilley, always acknowledged that said Cilley was the owner of the premises, and that he was there by his permission, then the plaintiff was entitled to recover, notwithstanding any acts the defendant had done or caused to be done upon the premises during that time.

The jury found a verdict for the defendant.

The plaintiff assigned as exceptions, that there was no sufficient evidence to authorize the jury to find that the defendant paid to Willey, or furnished to Major Cilley, to be paid to him, the original purchase money of the demanded premises, or that he ever afterwards paid the amount thereof to said Cilley, either of which the charge of the court in some of its aspects implied they might do.

That there was no sufficient evidence to authorize the jury to find an adverse possession of the demanded premises by the defendant for twenty years, as the charge of the court implied there was or might be.

That the verdict was against law and evidence.

That the defendant, out of court, in the absence of the plaintiff and his counsel, after the whole evidence in the case was closed, and the case argued on his side, and while the case was pending in this stage before the jury, in the presence and hearing of one or more of the jury, in the most direct and positive terms and manner, asserted and declared that the whole testimony of one of the most material witnesses examined on the plaintiff's side, was utterly and absolutely false. This was shown by affidavit. And the defendant, by his own affidavit, denied that he knew or was aware that any one of the jury was present when he made that statement. ·

*MacMurphy* and *Marston*, for the tenant.

We may make a valid defence to this suit in one of three ways.

1. By proving a possession and an equitable title. *Scoby v. Blanchard*, 3 N. H. Rep. 170.

2. By proof that the tenant paid the consideration money for the land, and had a deed of it, which was lost.

3. We may show an adverse possession for a period of more than twenty years.

The question is, whether there was sufficient evidence to authorize the jury to return a verdict for the tenant upon either of these grounds.

The evidence falls properly under three heads.

1. The evidence of possession by the tenant.

2. The character of the tenant's occupation.

3. The evidence of the conversation between the brother of the tenant and Cilley, under whom the demandant claims, concerning the purchase of this farm for the tenant.

Cilley v. Bartlett.

As to the first point, the tenant's possession was exclusive for more than forty years.

As to the character of his occupation, it distinctly appears from the case. He has been in possession, exercising all the rights of an owner, paying the taxes, paying no rent, none being required of him, repairing the buildings, building a new barn and taking away the old one, cutting and selling timber, cord wood and wood for coal, with the knowledge of Jacob Cilley, and without any objections on his part, erecting and removing fences and running out one of the lines of the farm. Now we may admit that all presumptions are to be made in favor of the title of the true owner, but these presumptions may be rebutted by the acts of the occupant of the land, done with the knowledge of the party who alleges that he is the legal owner. 1 Phil. Ev. 374; *Doe* v. *Stanton*, 2 B. & Al. 371; Stark. Ev. 914, 923, 924; Cowper 214; *Doe* v. *Reed*, 5 B. & Al. 232; Best on Presumptions 151, 152, 153.

8. The defendant's brother states that before Jacob Cilley purchased the farm, he proposed to the witness to join in buying a farm for the tenant, which the witness declined to do, and that after this purchase was made Cilley told him he bought for the tenant.

Now no other inference can be made from this evidence than that the farm was a free gift to the tenant. In the case of *Sumner* v. *Stevens*, 6 Met. 337, the evidence was, that more than twenty years before the date of the writ, the tenant's father made a gift to him, by parol, of the demanded premises, and that he afterwards went into possession thereof, and continued in exclusive possession upwards of twenty years. It was held, that although a grant of land by parol is void by the statute, still, when accompanied by an actual entry and possession, it manifests the intent of the donee to enter and take as owner, and not as tenant; and it equally proves an admission on the part of the donor that the possession is so taken, and that such a possession

is adverse, and when it is continued twenty years, it takes away the owner's right of entry.

We have proved the adverse possession, in this case, by the best evidence ; by the length of the possession and the character of the occupation. Angell on Limitations 410– 414. The intention of the possessor is what gives the character to the possession, and whether it be adverse or permissive, is a question of fact. Our evidence was clearly competent to go to the jury, and upon it they might have returned a verdict for us, if there were nothing on the other side.

It is said that the court erred in declining to instruct the jury that, if the defendant always acknowledged that Jacob Cilley was the owner of the premises, and that he was there by his permission, then the plaintiff should recover, notwithstanding any acts the tenant might have done upon the premises. But these acknowledgments, by the tenant, cannot be regarded as an estoppel. They merely constituted a part of the evidence which was to be weighed by the jury. 1 Greenl. Ev. §§ 27, 44 ; Angell on Limitations 400. They show that the tenant claimed title under a gift by Cilley, and this was a sufficient color of title, and the possession was adverse.

As to the improper conduct of the tenant, in relation to the jury, he denies that he knew that he was speaking in presence of a juror. In order to set aside a verdict for this reason, the tampering with the jury must be shown to have been by one of the parties, or his agent, or by their management. If it influence the jury, or were done by the party who meant to influence them, we admit the verdict should be set aside. *Bishop* v. *Williamson,* 2 Fairfield 495.

*Christie* and *Clark,* for the demandant.

GILCHRIST, C. J. In this case, the court instructed the jury that if the facts shown by the defendant led the jury

to believe that the original purchase, by Jacob Cilley, was for the " use and benefit" of the defendant, and the deed was made in Cilley's name, for some purpose of convenience which cannot now be explained, it would be a fraud in the plaintiff to set up the legal title against the " equitable right " of the defendant.

This charge was erroneous, because the facts stated in the case do not justify it. There is no evidence in the case that the original purchase by Jacob Cilley was for the " use and benefit " of the tenant, except that it was purchased by him out of charity for the tenant, and for the purpose of doing him a kindness. He permitted the tenant to remain upon the land without paying any rent for it, thus generously giving him the use of it. The case is entirely different from the case of *Sumner* v. *Stevens*, 6 Met. 337, cited by the counsel for the tenant. There the tenant's father made a parol gift to him of the land, and a subsequent possession for twenty years was held to be proof of the intent of the parties that the tenant should occupy the land as its owner. In the present case, there is not the slightest evidence that Jacob Cilley made a gift of the land to the tenant, and although mention is made of the " equitable right " of the tenant, the whole case shows that the tenant had no equitable rights whatever, but that he, an intemperate pauper, lived there exclusively as a pensioner upon the bounty of his uncle. The tenant had no equitable right unless the recipient of favors, bestowed for a long period, acquires an equitable right to their continuance for an indefinite term. There is no evidence in the case tending to show that Cilley had any " purpose of convenience " to subserve. It probably was not very inconvenient for him to purchase the land, and it was extremely convenient for the tenant to reside upon it without paying any rent. Other than this, there is not the slightest pretence that the land was bought for any purpose of convenience, but the evidence is overwhelming that the purchase was made as an act of kind-

ness to the tenant. The idea that there could be any fraud in the plaintiff, after the decease of Jacob Cilley, in setting up the legal title, strikes us as being in derogation of every principle of moral and legal right. The tenant went there as a beneficiary, with the assent of Jacob Cilley. He always remained in possession with the assent of Cilley. There is nothing which goes to show that the possession was taken against the consent of the owner, but all the circumstances prove that the possession was not adverse, and it is settled that the possession of land, by the consent of the true owner, is not adverse possession. Under certain circumstances, the length of time during which the possession has been enjoyed may be evidence that it was adverse. *Lund* v. *Parker*, 3 N. H. Rep. 49; *Bailey* v. *Carleton*, 12 N. H. Rep. 9. But all the circumstances here go to show that the possession was permissive, and not adverse. The repeated declarations of the tenant that he did not own the land, his acknowledgments of the kindness of Jacob Cilley, in permitting him to live there, and his declarations that he had no property whatever, although they do not estop him from proving a title, clearly show that he never supposed that he had any claim to the land.

In the second place, the court instructed the jury that if they were satisfied that there was a purchase of and payment for this property, by the tenant, they could presume that a deed once existed which is now lost. This instruction authorizes the jury to consider the evidence as tending to prove, among other things, that the tenant paid for the land. It is erroneous, because the evidence does not prove in the remotest degree, nor has it the slightest bearing upon the question of a purchase by the tenant. All the evidence is consistent upon one point, that the tenant occupied the premises with no other title than that derived from the consent of Jacob Cilley, which was given him as a matter of kindness.

The court should have instructed the jury according to

the motion made by the counsel for the demandant, that if they believed, as the plaintiff's evidence tended to show, that the defendant, from the time he moved upon the demanded premises till after the death of Jacob Cilley, always acknowledged that Cilley was the owner of the premises, and that he was there by his permission, then the plaintiff was entitled to recover, notwithstanding any acts the defendants had done, or caused to be done, upon the premises during that time.

If the defendant invariably acknowledged that Cilley owned the premises, and that he was there by his permission, such acknowledgments most decisively control and modify any acts the tenant might have done upon the premises during his occupation. A person who is in possession of land, and who is thereby *prima facie* its owner, may explain that possession by declarations showing its character. *Willies* v. *Farley*, 3 C. & P. 395; *Smith* v. *Smith*, 3 Bing. N. C. 29. In the case of *Doe* v. *Pettett*, 5 B. & A. 223, it was held that the declarations of a widow, in possession of premises, that she held them for her life, and that, after her death, they would go to the heirs of her husband, are admissible evidence to negative the fact of her having had twenty years' adverse possession. In the case of *Doe* v. *Harbrough*, 1 Nev. & Man. 422, it was held that declarations, made by a widow in possession, that A.'s son would have the estate after her death, are competent evidence that the property did not belong to her. In the case of *Doe* v. *Coulthred*, 7 Ad. & E. 235, it was held that where a person who was once in the receipt of the rents and profits of land, declared that he held by the permission of the lessor, the plaintiff's ancestor, it was evidence that the declarant did not own the property. *Doe* v. *Jauncey*, 8 C. & P. 99. A declaration by a person in possession of premises against his interest, is competent. *Doe* v. *Wainwright*, 8 Ad. & E. 691. *Ivas* v. *Finch*, 1 Taun. 141. Occupation being presumptive evidence of a seizin in fee, any declaration claiming a less

Cilley *v.* Bartlett.

estate is against the party's interest, and a person in possession of land is presumed to be owner in fee, and his declaration is admissible, when it shows that he was only tenant for life or years. *Crease* v. *Barrett*, 1 C. M. & R. 931. In *Peaceable* v. *Watson*, 4 Taun. 16, it is said by *Mansfield*, C. J., " possession is *prima facie* evidence of seizin in fee simple. The declaration of the possessor that he is tenant to another, makes most strongly, therefore, against his own interest." In the present case, the declarations of the tenant qualified and explained his acts, and showed that whatever he did upon the land was not done as the owner of it. The jury should have been instructed that if they believed the declarations and acknowledgements made by the tenant, the demandant was entitled to a verdict.

The case finds that the defendant, in the presence and hearing of one or more of the jury, asserted, in the most positive terms, that the testimony of one of the most material witnesses for the demandant was utterly and absolutely false. The tenant swears that he did not know any one of the jury was present at the time.

Whether he knew this fact or not, is not a matter that can be readily proved. But there will be no security for the proper administration of justice, if a party, while his case is on trial, can be permitted to make statements denouncing his opponent's witnesses, during the adjournment, after the jury have separated, whether he is aware of the presence of a juror or not. If he will conduct in this manner, he must take the risk of the consequences upon himself. The presumption is, that when jurors hear such statements they are more or less affected by them. *The State* v. *Hascall*, 6 N. H. Rep. 352. And as it is necessary that such conduct should be discountenanced, the judgment of the court is, that for this, as well as the other causes we have stated, the demandant is entitled to a new trial.

*Verdict set aside.*