# STRAFFORD,

## JULY TERM, A. D. 1855.

---

## LEIGHTON *v.* SARGENT.

Upon a question made as to the degree of professional skill possessed by a surgeon, as compared with that ordinarily possessed by the profession in general, the opinion of the physician with whom such surgeon studied his profession, is not competent evidence.

Nor is the general reputation, among the profession, of the medical institution at which a surgeon may have attended lectures upon the subject of surgery, competent evidence upon a similar question.

The declarations of the defendant, made to a physician, as to cases alleged to have been treated by him, and their symptoms, and the course of treatment pursued, and the opinion of the physician, derived from the statements and from the symptoms observed by himself, as to the propriety of the course pursued by the defendant, are not competent evidence upon the question of the defendant's skill as a surgeon.

Evidence of the manner of the treatment of surgical cases by the defendant, two years after the treatment of which complaint is made in the action, and eight or ten months after the commencement of the action, is not competent evidence upon the question of the degree of skill possessed by him at the date of the act complained of.

The fact that a surgeon of acknowledged skill assisted the defendant in the treatment of the case, a part of the time, but not by his procurement, during which time, however, it appeared that the defendant had the charge and control of the case, and that the consulting surgeon disagreed with him as to the course of treatment in relation to which the unskilfulness was alleged, is not competent proof to show either skill or diligence on the part of the defendant.

Where it was material to fix the time of a professional visit of the defendant to the plaintiff, of which a witness gave evidence, who also testified to professional visits to other persons, made by the defendant on the same day, it was *held* that the book of accounts of the defendant, purporting to contain his daily entries, made at the times indicated, and showing charges for pro-

Leighton *v.* Sargent.

fessional services against other persons mentioned as being visited by the defendant, is not receivable as evidence to show the time of the visits.

In case against a surgeon for an injury sustained by reason of alleged unskilful and careless treatment, the burden of proof is on the plaintiff, to show a want of proper knowledge and skill; but it is not requisite to prove it by evidence independent of and unconnected with the evidence of the treatment of the case in question.

In such a case, upon the question of damages, the increased amount paid to the surgeon, to effect a cure, by reason of the injury resulting from the unskilful treament, may properly be considered by the jury; and that is the proper limit.

According to a well settled practice in this State, the presiding judge, when requested in writing by the jury, after they have retired to find a verdict, may, in the absence of counsel, give them instructions in writing on points of law arising in the case, provided the application and instructions are preserved and' filed with the verdict, in order that they may be 'objected to, for error therein, if either party may think fit to do so.

The affidavits of jurors are inadmissible to show what may have transpired among themselves, in the jury room, while considering the case and agreeing upon their verdict, where the object of the evidence is to impeach the verdict.

The use of brandy, as a beverage, by jurors, while in the jury room, after retiring to make up their verdict, will furnish a sufficient cause for setting aside the verdict and granting a new trial, although the quantity drank be small, and no indications are shown, and no suspicions are entertained by the other jurors, that the jurors who partake of it are under any influence from spirituous liquors, and the liquor is furnished by the attending officer, at the request of a juror complaining of illness.

CASE, for unskilful and careless treatment of the plaintiff's injured limb, by the defendant, a physician and surgeon.

1. On the trial, the defendant proposed to inquire of a physician, under whom the defendant pursued his preparatory studies, his opinion whether or not the defendant, at the time he closed his studies with him, had more than the ordinary skill of the members of the profession, judging from his own acquaintance with them. The court did not allow the inquiry.

2. The defendant proposed to inquire of a physician as to the general reputation, in the profession, of the Vermont Medical Institute, at which it appeared that the defendant had attended lectures. The court did not allow the inquiry.

3. The defendant proposed to inquire of a physician what the defendant had told him about the symptoms, &c., in cases the defendant had been treating, and the course of treatment he, the defendant, had been pursuing, and the opinion of the witness, from these statements of the defendant, and the symptoms he himself saw in the cases, as to the propriety of the course the defendant said he had been pursuing, as showing the defendant's skill. The court did not allow the inquiry.

4. The defendant proposed to offer evidence of surgical cases treated by him, as showing his skill. But these cases having occurred a little more than two years after the time of the treatment of the plaintiff's case, and eight or ten months after the commencement of this suit, the court, therefore, rejected the evidence.

5. From the evidence, it appeared that one Dr. Grover assisted the defendant in the treatment of the plaintiff's case, during a part of the time, but the defendant had the .charge and control of the case. The defendant proposed to offer evidence showing said Grover to be a surgeon of great skill and experience. There was evidence tending to show a disagreement on the part of said Grover to the course of treatment by the defendant, in which unskilfulness is alleged in this case. The court rejected the evidence proposed.

6. A witness on the part of the defendant testified as to what he saw at a time when he accompanied the defendant on a professional visit to the plaintiff. The witness mentioned other professional visits made by the defendant on the same day. To fix this time, which was material, the defendant proposed to put in evidence his own account book, containing his daily entries, purporting to be made at the time, showing charges for professional services against the parties mentioned by the witness as the places where the defendant made the other visits, and the date of said charges as evidence of said time. The court did not admit the book.

7. The defendant contended that to maintain this action.

on the ground of the defendant's want of proper knowledge and skill, the plaintiff must offer evidence of such want, beyond and without the treatment of this case. But the court ruled that it was sufficient if the jury were satisfied, from their own judgment and the evidence offered, as to what was the proper treatment in such a case, and from the evidence as to what was the actual treatment by the defendant; that there was a wrong treatment arising not from an error of judgment on the part of the defendant as to what was best or proper to be done, but from his improper ignorance of what should be done; that the burden was on the plaintiff, to show a want of proper knowledge and skill, but it was not necessary to show that by evidence independent and unconnected with the treatment in this case.

8. The court instructed the jury that if they found for the plaintiff, they might, in determining the damages, consider the amount the plaintiff had paid the defendant for the professional services in which unskilfulness and carelessness are alleged.

9. During the night while the jury were considering the case in their room, they addressed a communication to the court. The court, without the knowledge of the counsel at the time, returned a reply in writing. This was returned into court, with the other papers in the case, by the jury, when they returned their verdict.

A verdict being returned for the plaintiff, the defendant thereupon moved that the same be set aside, and a new trial granted, on account of error in said rulings and proceedings of the court, and further, on account of certain erroneous proceedings and misconduct in the course of the trial.

10. In support of said motion on this last ground, the defendant proposed to offer the affidavits of jurors, showing what transpired between them in the jury room, while considering the case, and in what way the amount of damages

was determined. The court refused to receive such evidence to impeach the verdict.

11. From other evidence, it appeared that while the jury were in their room, the attending officer, at the request of a juror complaining of illness, gave him a flask containing some brandy, of which he and one or two other jurors partook. From the evidence, it appears that there was about a gill of brandy in the flask, and all of it was drank by the jurors partaking. Several other members of the jury testify that they did not know of the above circumstance, and that they saw no indication, and had no suspicion, of any juror being under any influence from spirituous liquors. And no evidence to the contrary appears.

12. A charge was made, at the trial, of misconduct on the part of one Josiah Moulton, but no evidence was laid before this court in support of the charge.

It was ordered that the questions arising in this case be transferred to this court for determination.

*Christie & Kingman,* for the defendant.

This court has already held, in relation to this case, that evidence tending to show ordinary knowledge and skill on the part of the defendant, is admissible in his behalf.

On the last trial, we offered to prove, 1st, the defendant's standing and acquirements as a medical student, as compared with the profession generally; 2d, as having some bearing on his acquirements, we offered to show that he had had good opportunities in obtaining his education, by showing the character and reputation of the medical institute where he attended lectures; 3d, we proposed to introduce medical men of high reputation, who had been called to consult with the defendant in his practice, and ask them such questions as to their knowledge of his skill, acquired by their own observation and experience in practice with him, as would tend to show his practical acquaintance with his profession, and his care and skill in applying it; 4th, we

proposed to show that the defendant, though a very young man, actually possesses an eminent degree of surgical skill, as proved by recent cases of a very similar nature to the plaintiff's, which he has successfully treated.

But the court rejected the evidence in each and all these particulars, confining us to the proof of facts occurring at or near the time of the treatment of the plaintiff's injury.

Experience, knowledge and skill are acquirements of slow growth. A surgeon would not be likely, in a country medical practice, to make great additions to his surgical experience in the course of four or five years; and, on the other hand, in such a practice, the most skilful surgeon might have very little opportunity to exhibit his ability, from the rare occurrence of important and difficult cases. To confine us, therefore, to such narrow limits, was a manifest injustice.

II.   We should have been allowed to show the skill and experience of Dr. Grover; for if the plaintiff had the benefit of such a man's services, during the most difficult part of his sickness, there is certainly less foundation for the charge that his present misfortune is to be attributed to the defendant's want of skill or negligence. The alleged disagreement between the doctors was the merest expression of opinion in a *conversation* between them.

III.   As to the introduction of spirituous liquors into the jury room, we suppose no apology can excuse, and no tribunal tolerate so gross an exhibition. We rely on the following authorities as conclusive on this point:

" Where a juror, after a cause was committed to the jury, drank brandy, though in a trifling quantity, and, as he stated, to check a diarrhœa, held that the verdict should be set aside." *Brant* v. *Fowler*, 7 Cow. 562.   " It will not do to weigh and examine the quantity which may have been taken by the jury, nor the effect produced." *The People* v. *Douglass*, 4 Cow. 26.   " The circulation of spirituous liquors among a jury, while sitting as such, even with the consent

of the parties, is cause for reversing the judgment." *Pel-* *ham* v. *Page*, 1 Eng. 535, (Arkansas.) " A verdict was set aside for the introduction of intoxicating liquor into the jury room." *Gregg* v. *McDaniel*, 4 Harring. 367. " It is cause for reversing a judgment, that spirituous liquors were circulated among the jury, while sitting as such, even though by consent." *Rose* v. *Smith*, 4 Cow. 17; *Bullard* v. *Spoor*, 2 Cow. 430; see also *State* v. *Prescott*, 7 N. H. Rep. 297.

*Wiggins*, with whom was *J. S. Wells* and *Wheeler*, for the plaintiff.

1. The first five propositions of the defendant are identical in the purpose for which they were offered, and involve the same considerations and questions of law. They were offered to sustain the general position taken by the defendant, that he was possessed of that degree of skill and learning which the law required; and this was one of the questions for the jury to try, upon competent testimony submitted to them.

The first proposition was inadmissible, because it was the mere opinion of the witness upon the question of fact, which the jury were to pass upon, and find one way or the other. When the opinion of a witness is admissible, is clearly and distinctly established by law. It is confined to men of science, art or skill in some particular branch of business; to experts, who, from their peculiar knowledge of the subject matter, can state what, in their judgment, would be the result of certain facts submitted to their consideration. It is confined to some act done, some treatment or course pursued, some result or consequence, but is never allowed as to the mere qualifications, the general professional skill and learning of a party. This class of witnesses is never allowed to give an opinion on things with which a jury may be supposed to be equally acquainted. Now, in the case at the bar, after the witness has stated the facts upon which his opinion is based, from those facts the jury

ᐱcan judge equally as well as he. His opinion or conclusion would not result from his scientific knowledge, his art or skill, but would be a mere naked opinion, and we think, upon every principle of law, clearly inadmissible. Opinions of witnesses are only admitted in evidence from necessity, and are exceptions to the general rule. The opinion of the witness, in the case at bar, was not within any of the exceptions. If the opinion of witnesses upon this question were admissible, then the case would be tried upon opinions, and not upon facts; and it would involve the court and jury in an endless consideration of collateral questions, of the facts and means of knowledge upon which the opinion was based, and how much the opinion of the witness himself was worth, &c.

So as to the second proposition, to show the general reputation of the Vermont Medical Institute. The general reputation of the institute had no tendency to show the possession of skill and learning by the defendant. The course of studies which he actually pursued, and his application and diligence as a student, the means of acquiring knowledge which that institute placed within his reach, and his use of those means, *may* be facts having a legitimate bearing upon the question of knowledge and skill, but not so with the proof offered. The general reputation of the school can hardly be received, we think, as evidence of the skill, diligence and qualifications of the scholar. Whichever way the fact was, as to the reputation and standing of the institute, it was wholly immaterial; and the proof offered was incompetent for the purpose for which it was sought to be introduced. We suppose, clearly, evidence of the general reputation of the defendant for skill, would be inadmissible, yet it would be evidence of a higher character, and have a much more direct bearing upon the question at issue, than evidence of the general reputation of the institute where he may have attended lectures.

The third proposition is not only objectionable, on the

ground that it is the mere opinion of the witness, but, in fact, lets in the defendant as a witness for himself; for the opinion of the witness is not based upon his own knowledge of the cases treated and the defendant's course of treatment, but upon what the defendant afterwards told him; and the evidence is not as to what the defendant *did*, but as to what he *said* he did. The opinion, then, resting upon an insupportable basis, cannot be admitted, if otherwise it was competent. So far as the witness saw the symptoms himself,— if this kind of evidence is admissible at all, which we by no means concede,—he might, perhaps, be permitted to state them, and the kind of treatment which, in his judgment, the case required. The evidence is further objectionable, because it assumes that the witness himself possesses such a degree of skill and experience as a surgeon and physician, as would warrant the court in taking his opinion.

The fourth proposition is inadmissible, because it was to show possession of skill, by the defendant, not at or about the time he treated the plaintiff, but more than two years afterwards, and long after this suit was commenced. Skill is the art of doing a thing as it ought to be done, and is acquired by learning, experience, application and study; and the defendant's present skill, acquired by these means, for a period of more than two years, in the treatment of surgical cases, cannot have, and ought not to have, any tendency to show the possession of skill at the time of the treatment of the plaintiff's case. Where are we to draw the line which marks the progress of the defendant in the acquisition of professional skill? We cannot see how it can be admissible, unless the defendant assumes that he possessed as much skill when he treated the plaintiff as he does now, after the lapse of so long a time for improvement and acquiring knowledge,—an assumption which would go a very little way, we think, to show that he was either skillful or competent at either period.

The fifth proposition, to show that Grover was a surgeon

of great skill and experience, was wholly immaterial and collateral. The case was the defendant's; he had the charge and control of it; and the mere proof that Grover possessed skill and experience does not have any tendency to show either that the defendant possessed these qualifications, or that he brought them to bear in his treatment of this case. Grover himself might have been a competent witness to show the nature of the injury to the plaintiff, and the defendant's treatment of it, and, being a surgeon of great skill and experience, might, perhaps, say whether, in his judgment, the defendant's course of treatment was proper or not; but the mere independent fact which the defendant proposed to show, without connecting him with any responsibility in the treatment of the case, and without showing that he assented to and approved of the course pursued by the defendant, we think, is clearly inadmissible. There was evidence, however, that Grover *disagreed* with the defendant, in his course of treatment of the plaintiff. Grover had no part in the charge and control of the case; for every thing that was done, the defendant was wholly and alone responsible, and he cannot shield himself from that responsibility, behind the reputation of an experienced and skillful surgeon, who did not approve of his course of treatment of the plaintiff's case.

The sixth proposition, to put in the defendant's account-book as evidence to fix the time of a certain transaction, testified to by a witness, was properly rejected. The account-books of a party, whether verified by oath or not, are inadmissible to prove any matter collateral to the issue of debt and credit between the parties. This question has been settled in this State, in the case of *Batchelder* v. *Sanborn*, 2 Foster's Rep. 325, which is directly in point.

The defendant contended that to maintain this action on the ground of want of proper knowledge and skill in the defendant, the plaintiff must offer evidence of such want, beyond and without the treatment in this case. This posi-

tion is clearly untenable, and the instruction of the court unobjectionable, and fully as favorable to the defendant as the law would allow. The plaintiff was bound to show want of proper skill and knowledge in the defendant, by such evidence, and to such a degree of proof as would satisfy the jury of the fact which he was required to make out. The evidence we offered was unquestionably competent, and the jury found it sufficient, and we believe no exception lies to the ruling of the court in reference to it.

The instructions of the court, in reference to damages, we think, were correct. There is no rule of law which regulates the assessment of damages in cases of this character. The judgment of the jury is to govern, and they may give such damages as the case requires, in equity. *Leland* v. *Stone,* 10 Mass. Rep. 459–462; *Weld* v. *Bartlett,* 10 Mass. Rep. 470–473.

The money which the plaintiff had paid was part of his loss, and in any equitable view of the case, it was proper for the jury to consider that fact in determining the amount of damages they would give the plaintiff. No objection was made to the evidence upon this point when it was introduced, and we submit whether it is not too late to except to the legitimate bearing and effect of the evidence after it is in. *Wait* v. *Maxwell,* 5 Pick. 217; *Rice* v. *Bancroft,* 11 Pick. 469.

No objection lies to the course pursued by the court, in returning a reply in writing to the communication of the jury. The matter was wholly within the discretion of the court. The communication was for instruction upon a question of law; the reply was in writing, and both question and answer were returned into court with the verdict. No exception is taken to the instructions contained in the answer; they are unexceptionable. However the law may be elsewhere, in this State it is settled that these proceedings furnish no cause for a new trial. A case exactly in point is *Shapley* v. *White,* 6 N. H. Rep. 172.

In support of a motion to set aside the verdict, on account of alleged misconduct of the jury in the jury room, the defendant offered affidavits of some of the jurors to show what transpired between them in their room. The court refused to receive these affidavits, and very properly; such is the law of this State.

The affidavit of a juror is admissible in exculpation of himself, and to sustain the verdict, but not to impeach it. *State* v. *Ayer*, 3 Foster's Rep. 301; *Tenny* v. *Evans*, 13 N. H. Rep. 465.

These cases in our own courts have been followed by a decision in the supreme court of Massachusetts directly in point. The case is the *Boston and Worcester Railrood Corporation* v. *Amos W. Dana*, in first part of 1 Gray, (Mass. Rep.) The abstract of the case, as found in the Law Reporter for October, 1854, is this:—" Affidavits of jurors cannot be received to prove misconduct in the jury room."

In support of the motion to set aside the verdict for misconduct on the part of some of the jurors, two other grounds are taken :—

1. Because three of the jurors partook of some brandy while they were in their room.

2. Because of the improper feeling and conduct of Josiah Moulton, one of the jurors.

In relation to the first, no question is made of the impropriety of the conduct, both of the officer and the jurors; but still, we think, it was not of such a gross character as ought to disturb the verdict, because

1. The officer, in furnishing the brandy, seems to have acted from a proper and humane motive. The juror complained of illness, and requested the officer to get it for him on that account, and he, upon the spur of the moment, gave it to him.

2. The quantity furnished was so small that it could have had no injurious influence upon the jurors who drank

it, and it appears affirmatively by the affidavits of nearly all the jurors that it did not.

3.  The jurors who partook of it had agreed to the verdict, which was afterwards rendered, hours before they did so, and it could not have had any effect in producing the conclusion to which they came. Eleven of the jurors agreed very soon after they retired to their own room, and the twelfth one, who did not agree till the next morning, did not partake of the liquor, and saw no indication, and had no suspicion, that any had been used.

4.  The jury did not agree upon their verdict until some twelve hours after the liquor was used, and at that time they could not have been at all under the influence of it.

5.  The plaintiff had no part in this transaction, or knowledge of it till after the verdict was rendered.

There are authorities in New York and some other States, which hold such proceedings sufficient to set aside a verdict; but in Maine there are authorities entirely the other way.

In *Princeton* v. *Humphreys*, 6 Greenl. Rep. 379, two points were settled:

1.  A verdict will not be set aside because the jury, without the privity of the prevailing party, and being fatigued and exhaused with the length of the trial, were furnished with some refreshments, at their own expense, during their deliberations on the cause, however liable the jurors might be to personal admonition from the court for such misconduct.

2.  But if ardent spirits constitute part of such refreshments, and appear to have operated upon any juror so far as to impair his reasoning powers, inflame his passions, or have an improper influence upon his opinions, the verdict would probably be set aside.

We refer also to the cases cited by the defendant's counsel in this case.

In relation to the improper feeling and conduct of Josiah Moulton, one of the jurors, it appears,

1. That the plaintiff was entirely disconnected with whatever this juror said and did. He had nothing to do with it, and had no knowledge of it.

2. That both Stackpole and Sanborn, the persons upon whose evidence the defendant undertakes to show the improper conduct of Moulton, are charged with improper interference and conduct themselves. This is shown by the affidavit of Moulton, and distinctly enough appears from the affidavit of Stackpole himself, which, upon its face, is of so suspicious a character as not to be entitled to much weight. But,

3. The charges made by both Stackpole and Sanborn, which took place on different occasions, are denied by Moulton, under oath, in the most explicit manner. The charges, then, are not sustained, not proved. The statements of Palmer and Smith (and the statement of the latter is not under oath,) do not contradict Moulton's affidavit in any material point, nor support the charge of Stackpole. Upon this state of facts, we belive the court will not feel authorized to set aside the verdict. *State* v. *Ayer*, 3 Foster's Rep. 321.

WOODS, C. J. One important question involved in the trial related to the degree of skill possessed by the defendant as a surgeon. The fact essential to be proved was, that he was as skillful as surgeons generally in the section of the country in which he practised, or, in other language, that his skill was equal to the ordinary skill of the members of the profession in practice.

1. The opinion of the physician with whom the defendant studied his profession, was asked as to the fact whether he possessed " more than the ordinary skill of the members of the profession, judging from his acquaintance with them." The court declined to permit the inquiry to be made. Was the ruling correct ? It was clearly matter of opinion that was

sought.   An opinion was asked touching the relative skill
of the defendant, so far as the witness could judge.   Had
the defendant a right to that opinion before the jury?   The
general rule is, that the opinions of witnesses are not evi-
dence.   To this rule, however, there are some exceptions.
In *Rochester* v. *Chester*, 3 N. H. Rep. 365, it is said that
" on questions of science and trade, and others of the same
kind, persons of skill may no doubt be permitted to give
their opinions in evidence, because the jury, being wholly
unacquainted with the particulars on which such opinions
are founded, could be unable to draw any correct conclu-
sions from hearing them stated ; for instance, was a physi-
cian to state the particular medicine administerd to a pa-
tient, from being unacquainted with the operation and effect
of such medicine, the jury would be wholly incompetent to
judge whether such treatment would probably produce the
death of the patient or not.   So if a shipbuilder should
state to a jury of the country the condition of a vessel, they
would be unable to judge whether she would be seaworthy
or not.   So should a mechanic describe to the jury a com-
plicated machine, constructed of different materials, of which
they were unacquainted, it would be impossible for them to
judge, with any degree of accuracy, of its value."   These
cases are given as illustrations of the exceptions to the gen-
eral rule stated above.   It would seem from the illustrations,
that when it is supposable that jurors can form a correct
judgment or opinion, without the aid of the opinions of
others, from facts stated, the opinions of others are not, as a
general rule, to be received in evidence.   But when it is
otherwise, their opinions may be received on questions of
skill and science.   In the case before us, the jury, we con-
ceive, might well be supposed to be able to determine
whether the defendant possessed " the ordinary skill of the
members of the profession," from the facts being stated upon
which the witness might found his own opinion.   If the
witness knew the extent of the knowledge and skill of the

members of the profession generally, he might state the facts constituting the evidence of that knowledge and skill among them generally, and also in relation to the particular individual in a case like this; and we think that when they should be stated, the jury might form a correct judgment as to the comparative skill of the profession generally, and of the individual. A competent and skillful surgeon would, doubtless, well know and could easily state what constitutes skill in another. And he could describe the extent of the possession of the qualifications constituting it among the profession, and also so far as it relates to the individual. From such a statement, the jury could readily form a judgment, and make the requisite comparison. We think there was no error in the ruling of the court, in this branch of the case.

2. We are of the opinion that the general reputation of the Vermont Medical Institute, at which it appeared that the defendant had attended lectures, could have no legitimate bearing upon the question of the skill of the defendant as compared with that of other surgeons. Whatever that reputation might be, the individual student might possess more or less skill than others. The proficiency that one makes in the pursuit of science must depend mainly upon personal exertion and talent, and cannot be measured with legal accuracy by the reputation of the institution at which his studies may be pursued.

3. We think, also, that the ruling of the court was correct, in disallowing the third proposed inquiry stated in the case. The object of the inquiry was to lay before the jury the evidence of what practice the defendant had had, and the cases he had treated, and his course of treatment of them, and thus to show his skill. The true objection to the evidence proposed was, that it would not show what the character of the cases was, nor their treatment, excepting by the defendant's own declarations, which, being in his favor, were not evidence.

4.  The evidence proposed to be given of cases in surgery actually treated by the defendant, as showing his skill, was properly rejected. The cases occurred two years after the case in question, and even if he were then as skillful as the rule of law requires, it would not legitimately show that he was so skilled at the date of the act complained of in this case. Skill, possessed two years subsequently to the time of the act complained of, does not presuppose a like degree of skill at its date.

5.  The fact that Dr. Grover, a skillful surgeon, assisted the defendant in the treatment of the plaintiff, could have no tendency to prove either the skill or diligence of the plaintiff, and particularly when taken in connection with the evidence of their disagreement as to the mode of treatment pursued by the defendant. We do not understand that Grover attended by the procurement of the defendant, and so his attendance furnishes no evidence of diligence on the part of the defendant, and their disagreement would not prove his skill, Grover being confessedly skillful.

6.  The account-books were clearly not evidence in his favor as to the time of his visits to other patients. They were nothing more or less than written declarations as to facts material to the cause of the defendant, made by himself. They might or might not be accurately and truly made. The case of *Batchelder* v. *Sanborn*, 2 Foster's Rep. 325, is a case directly in point, to show that the books were not competent evidence for the purpose for which they were offered. That action was case, for flowing the plaintiff's land by means of a dam, and the defendant justified upon the ground of an alleged license to build and maintain it. No direct evidence was given of the license, but the second season after it was built it was carried away by a freshet, and the defendant gave evidence tending to show that the plaintiff worked one day in repairing the dam, and after offering a witness of that fact, he offered in evidence his book of accounts to establish the fact of the day of the date

of the labor. It was decided that the evidence was incompetent for that purpose, it being the mere written statement of a fact by the party himself, not calculated to elucidate it, and deriving no credit from it. A similar principle is recognized in *Mattocks* v. *Lyman*, 18 Vt. Rep. 98.

7. The court below were right in instructing the jury that the burden of proof was on the plaintiff, to show a want of proper knowledge and skill on the part of the defendant, but that it was not necessary to prove it by evidence independent of, and unconnected with the treatment in the case. It is quite clear that the treatment of the particular case might show such gross ignorance of the business of the surgeon, as to put it beyond all doubt that he had not the amount of skill usually possessed by the profession, or even, in fact, that he had no knowledge of his profession at all. It might appear that the course pursued was wholly unknown to the profession, and that it resulted, as it necessarily must, in detriment to the patient. Nothing further, certainly, would need to be shown to render one answerable for an injury done, who should offer his services as a skillful surgeon.

8. We think the instruction to the jury that, in estimating the damages, they might consider the amount paid by the plaintiff to the defendant, for his professional services in the case, was, to a certain extent, erroneous. The damages to which the plaintiff was entitled, were those resulting from the injury sustained by reason of the unskillful treatment of the case. Of such would be the pain, loss of time, suffering and increased delay in obtaining a cure, and, perhaps, a permanent injury, and an expenditure of money necessarily consequent upon the injury sustained by the maltreatment. The amount paid to the plaintiff not appearing to be paid wholly for services to remedy the injury resulting from the defendant's want of skill, can hardly be said to be of the character of damage to the plaintiff, entitling him to recover on that account, and to that extent. It might be that the

Leighton *v.* Sargent.

amount paid him far exceeded what would have been neces-
sarily incurred, if the plaintiff's case had been properly
treated, and for that excess he might well recover ; but the
direction to the jury went further, and embraced the entire
sum paid the defendant. We think there was error in this
instruction, as it was stated to the jury. It was not properly
limited.

9. The course of the court in sending written instruc-
tions to the jury, in the absence of counsel, when called for,
and preserving the written request of the jury, was entirely
justified by the settled practice in this State, as well as by
the decision in the case of *Shapley* v. *White*, 6 N. H. Rep.
172. The instructions given were returned and filed with
the verdict, and the request preserved by the court, so that
it could be seen by counsel whether any erroneous informa-
tion or direction had been given to the jury. No harm
could possibly result from such a practice.

10. It is now fully settled, in this State, that the affida-
vit of a juror is admissible in exculpation of himself, and to
sustain a verdict, but when it relates to what took place
after the jury had retired, is wholly incompetent to impeach
it. *Tenney* v. *Evans*, 13 N. H. Rep. 465 ; *State* v. *Ayer*,
3 Foster's Rep. 301.

11. For the cause that brandy was furnished to the jury,
and drank by several of them while deliberating upon the
cause, after retiring to form their verdict, we think the ver-
dict must be set aside. The quantity drank was probably
small ; but we cannot consent that that fact should make a
difference. We fully concur in the remark made by the
learned judge in *People* v. *Douglas*, 4 Cow. 36. " It will
not do to weigh and examine the quantity which may have
been taken by the jury, nor the effect produced." The
cause alleged of slight illness, will not justify the use made
of the liquor. The case was not so pressing as not to allow
of opportunity for leave to be given for its use, if found to
be one properly requiring it. *Brant* v. *Fowler*, 7 Cow. 562.

Many other cases in the books go quite far enough to sustain this opinion in this particular.

12. No evidence having been laid before us, in support of the charge of misconduct on the part of Josiah Moulton, of course no question arises respecting it claiming our consideration.

*Verdict set aside.*