## PETITION FOR HIGHWAY IN NEWPORT.

The furnishing of spirituous liquors by the petitioners for a highway, to the county commissioners while engaged in the hearing, of which they repeatedly drank, is an abuse, for which the court will ordinarily set aside a report in favor of such petitioners, without inquiring how far the commissioners were affected by it.

THE petition of H. H., and others, for a new highway in Newport. At this term of the court, the report of the county commissioners was returned, wherein they had reported in favor of laying out a new highway in Newport, agreeably to the petition which had been previously referred to them, for the distance of something over a mile, and at the estimated expense of about three thousand dollars.

The chief object of said proposed new highway appeared to be to provide a substitute for certain bad and steep hills on the old Croydon turnpike road, located in the south-east part of said Newport, and near Goshen line.

The town of Newport opposed the acceptance of said report, filing sundry exceptions thereto, under the rule of the court. Evidence in support of said exceptions was offered by the town and in answer to the same by the petitioners.

The fifth and seventh exceptions had special reference to the use and consumption of ardent spirits by said commissioners, as furnished to them, during the progress of the hearing, and the laying out of said road, by the agent of the petitioners.

The evidence on this point tended to show, from the admission of said agent and otherwise, that before the commissioners came on to examine the route, he thought it proper to provide some liquor for the commissioners, also for any friend or foe of the road, that might be present at the hearing. Accordingly the first day of the hearing, as said agent stated, " we dined at Mr. John Chase's, one of the petitioners, resident in Goshen. Before dinner the whiskey furnished by me was set on to the table in presence of the commissioners, and the counsel on both sides."

The commissioners partook of the spirit; the counsel for the town did not take any, or make any open objections to its use. At the subsequent stages of the hearing, and the laying out of the road, it appeared that both whiskey and Holland gin were furnished to two or all the commissioners, on two or three different occasions, and at the expense and procurement of the same agent of the petitioners.

The agent of the petitioners testified that, on the 18th day of May, he met the commissioners at Mrs. Lucy R. Page's house. He carried down with him a bottle of gin and put it in a winnowing mill. "Took it there because he thought they would need it. It was rainy that forenoon; we did not go out much; invited the commissioners to my house to take some dinner. They did go up there and get some dinner. It is possible I gave them some liquor at my house before dinner; I don't certainly remember about it. The opponents of the road were not present at Mrs. Page's or at my house on the aforesaid day. Met the commissioners again on the 19th of May; proceeded to lay out the road. Some of the landholders were present. In the afternoon, after we got most through, a request was made that I would send and get something to drink. At my request Mr. Hall, the chainman, went up to Newport village and got a quart of Holland gin. It was brought down where we were and we all drank once. We then proceeded out to the end of the new road where it intersected with the old road;" and it was there shown that some of the parties took another drink. It was not shown that all the commissioners took any there the second time; one witness testified that two of them did. William Hall, the chainman, was then about to go off, and he stated to the agent of the petitioners that the jug and the remainder of the gin belonged to him. The agent said "No, take it and carry it away. The gin belongs to the public." "Before we got out to the road Mr. Nourse, and Mr. Barton, counsel for the town, had arrived and had some conversation with the commissioners, &c., but took no gin. Mr. Emerson, interested in behalf of the town, took some of the gin once at least." The agent said all wanted to feel well, and wanted to have a good time.

It was not proved that the commissioners were at any time disguised by reason of drinking this liquor. But the counsel for the town did contend that the report of the commissioners should be set aside:

1st. Because of the vicious tendency of the use of ardent spirits upon the minds and judgments of the commissioners or triers.

2d. Because it is against the policy of the law and dangerous to allow a representative of a party to undertake to influence an independent tribunal in this way.

*Burke* for petitioners.

*Barton* for the town.

BELLOWS, J. The evidence shows that the agent of the petitioners provided spirituous liquors for the use of the commissioners and others

while examining the route of the proposed highway; and that two or all of the commissioners repeatedly drank of those liquors during the hearings. How much they drank and with what effect does not distinctly appear, although the case finds that there was no proof that they were at any time disguised. It appears also that these liquors were openly furnished in the presence of the counsel of the opposing party, who also were at liberty to partake, but did not do so.

We have, then, a case where one of the parties has furnished to the county commissioners spirituous liquors which they drank freely while considering the application of that party to lay out a highway; and we are constrained to regard it as an abuse that ought to find no countenance in courts of justice. It is true that it was openly done, and that the counsel of the other party made no objection. In some cases the silence of counsel upon the subject would justly be regarded as a waiver of the exception; but considering the delicate nature of the objection, and the reason to fear that the urging of it would give offence to the commissioners, we are not disposed to regard it as waived in this instance. The counsel for the town indeed seems to have declined to partake with the commissioners, and in this way exhibited what might well be regarded as his dissent from the proceeding. Had he gone farther and made an explicit objection he might have had reason to fear the arousing of a feeling more prejudicial to his client than any use that would be likely to be made of the liquor.

It does not appear from the case, nor is there any suggestion, that the spirit was needed on account of any illness; but on the contrary it seems to have been used simply as a beverage; and taken in connection with the fact that it was furnished by an agent of one of the petitioners under circumstances which afford ground for the suspicion that it was done to influence the commissioners favorably toward his side, we cannot but regard it as in a high degree reprehensible, and as well calculated to bring reproach upon the tribunal which may tolerate it.

There is no evidence in this case that the county commissioners were injuriously affected by the liquor they drank, or that injustice was done by their report; yet as we regard the act of furnishing the liquor to the commissioners by one of the parties as highly improper and objectionable, we cannot stop to inquire as to its precise effect. It is enough for us to know that such means of influence are sometimes resorted to, and as we have reason to think with some effect. If, then, such practices were to be tolerated we cannot fail to see that great injustice might sometimes be the result; and as from the nature of the case it would generally be impossible to measure the extent of their influence, no other course is open to us but to discountenance wholly the practice.

In regard to jurors it has been decided in this State that if it appears that while the jurors are deliberating upon a cause they make use of ardent spirit, their verdict will be set aside, and that the court will not weigh and examine the quantity they may have taken, nor the effect produced. This was so settled in *Laighton* v. *Sargent*, 31 N. H. 137, where the quantity taken was small. So is *State* v. *Ballard*, 16 N. H. 145. The same degree of strictness may not be applicable

to the county commissioners, and the court might not be called upon to interfere where one of the commissioners had, upon his own judgment of' what he required, drunk a glass of ardent spirit. But a very different case is presented where, as in this case, one of the parties takes it upon himself to treat the commissioners repeatedly, during the hearings, with whiskey and gin ; and if what was done here is to be tolerated, it is difficult to assign any limits short of absolute intoxication, beyond which parties could not go. Such practices, we are 'sure, would shock the moral sense of the community, and if suffered to exist would in the end destroy public confidence in the administration of justice.

It is urged by the counsel for the petitioners that the county commissioners act judicially in such proceedings and that it is to be presumed that they would not be influenced by any thing but the law and evidence before them. Granting this to be true, however, and giving them the full benefit of this presumption, it is quite well settled that their report may be set aside for misconduct of a character similar to what is alleged here. In *Peavey* v. *Wolfeborough*, 37 N. H. 286, it is laid down by Bell, J., that where the county commissioners have themselves introduced or encouraged conversations or discussions relative to the subjects they are to decide, or have deliberately listened to statements of facts or opinions bearing on such subjects in the absence of the other parties interested, and when they have no notice to be present, it must be regarded as gross misconduct for which the report should be set aside ; and if the parties have so conducted in this respect as to leave it in doubt whether the attempt has not been made improperly to influence the commissioners by partial statements and discussions behind the back of the other parties interested, a proper regard to the cause of justice must compel the court to set aside a report made in their favor.

In the same direction are *Patten's Petition*, 16 N. H. 277, and *Jones* v. *Goffstown*, 39 N. H. 258, where it was held that if it appeared that the commissioners did not give to the parties interested a fair opportunity to be heard the report should be set aside. See also *Knowles' Petition*, 22 N. H. 361, where the report was set aside because of an agreement between the petitioner and the selectmen that they should withdraw their opposition, in consideration of petitioner's agreement to indemnify the town against damages and costs.

The report of the county commissioners laying out a highway is to be made by law to this court which has the power to recommit it for good cause, or to accept it and render judgment thereon ; and it is clearly incident to that power to set aside or recommit the report for a cause like the one now urged. It is true that by law passed in 1858, the commissioners are made the sole judges of the competency of evidence ; but the general power to recommit for good cause still remains, and the cases we have cited show that the power exists in a case like the present ; and we have no hesitation in saying that it ought to be exercised in this case.

*Report set aside and ordered to be recommitted to new board.*