March 21,
1876.                     NOYES *v.* GOULD.

### *Referees—Misconduct, when waived.*

While a cause was being heard before referees mutually agreed upon, in which the subject-matter in dispute was the location of a range line, a person not a party to the suit, but interested to have the line established where the defendants claimed it to be, furnished some brandy, of which two of the referees partook, in the presence and with the knowledge of both parties, and without objection from either. The award of the referees being returned into court, the plaintiffs moved to set it aside because of the furnishing of the brandy. *Held,* the defendants not being in fault, that the plaintiffs, by having allowed the hearing to proceed without objection, must be taken to have waived the misconduct of the referees.

FROM GRAFTON CIRCUIT COURT.

Motion to set aside the report of referees agreed upon by the parties, and acting under a rule of court, upon the ground that spirituous liquors were furnished them by the defendants, or those in their interests.

Prior to September term, 1873, there were two actions of trespass pending between the plaintiffs and the defendants, in which the location of the range line between certain lots of land in Bethlehem was in dispute, and the location of the same range line was also in dispute between certain other owners of adjoining lots; and it was agreed, between the plaintiffs and those claiming the line to be where they claimed it, and the defendants and those claiming the line to be where they claimed it, to refer the dispute to three referees, they to determine the location of the range line, and the questions involved in the two actions of trespass before named;—and accordingly, at the September term, 1873, a rule was issued to the referees agreed upon. After due notice, and a full hearing of all the parties, but without counsel, the referees made an award in favor of the defendants.

It appeared in evidence, that, while the referees were making an examination of the lines, Gould, one of the defendants, went to notify one Libbey, one of the parties in interest on the side of the defendants, that the referees would be upon his lot the next day. This notice was given in presence of one of the referees, who remarked that if he (Libbey) came out there the next day, and did not bring something to take, meaning some spirituous liquor, he (Libbey) need not expect to get back alive. The next day Libbey appeared upon the line, and, while the referees and the parties were at dinner, he produced a bottle of brandy, and passed it round, and two, at least, of the referees, in the presence, with the knowledge, and without objection from

any of the parties, drank. There was no concealment of the liquor, and none of the parties were intoxicated. During the afternoon, the bottle was carried by one of said two referees; but the evidence tended to show that he did not drink again till after the hearing was comple ed for the day. It also appeared that, the day before, one of the plaintiffs brought out some new cider, just made, which was passed round, and from which any one who chose drank; but it was not intoxicating.

No objection to the use of the cider or the brandy was made until the report came in, when the plaintiffs, being dissatisfied with it, on this ground among other things, moved to set it aside.

The court denied the motion, and the plaintiffs excepted.

The questions of law arising on the foregoing case were transferred to the superior court by STANLEY, J.

*Bingham & Mitchell* and *Farr & Stevens*, for the plaintiffs.

*Ray, Drew & Heywood*, and *J. L. Foster*, for the defendants.

SMITH, J. The parties to these two suits, together with others interested in the location of the same range line, agreed to submit to the determination of three referees, mutually agreed upon, the matter in dispute, which was the true location of said line. A rule of court thereupon issued to the arbitrators thus selected, and a hearing took place before them upon the premises, in the town of Bethlehem, lasting, it is said, some four or five days, and, by further agreement, without the presence of counsel. A remark made by one of the referees to Libbey, one of the persons interested in the location of the line in dispute, but not one of the parties to these suits, in regard to furnishing spirituous liquor, was evidently jocosely made, but unfortunately was differently understood. He very foolishly procured a bottle of brandy on the following day, which was passed round while the referees and parties were at dinner, and two at least of the referees partook of its contents, in the presence and with the knowledge of, and without objection from any of, the parties. One of the two referees then carried the bottle during the afternoon, but did not drink from it again—at least, until the hearing for the day was completed. There was no attempt made at concealment, and none of those who drank were intoxicated. There is no evidence that its use had any effect upon the judgment of the referees, and there is no reason for supposing it was furnished with a view of influencing their action. All the parties allowed the hearing to go on, at very considerable expense, each taking his chance of obtaining a favorable verdict.

The report being unsatisfactory to the plaintiffs, they now move to set it aside because of the above alleged improper conduct of Libbey and of two of the referees.

When parties have selected their own arbitrators for settling their disputes, the courts are slow to set aside their decision for other than substantial reasons. It will, ordinarily, not be done, unless the court can see

that a full and fair hearing has not been had, or the conduct of the arbitrators has been such as is calculated to bring reproach upon the cause of justice, and the tribunal that may tolerate it. Accordingly, the courts of this state have set aside verdicts because of the use of stimulating liquors by a jury while deliberating upon a verdict, without first showing a case requiring such use, and procuring leave of the court for that purpose, and that without inquiring whether the use was an intemperate one or otherwise. *State* v. *Bullard*, 16 N. H. 139. They refuse to weigh and examine the quantity which may have been taken by the jury, or the effect produced—*Leighton* v. *Sargent*, 31 N. H. 119, *People* v. *Douglas*, 4 Cow. 36 ; and in the *Newport Highway*, 48 N. H. 433, where spirituous liquors were furnished by the petitioners, of which the commissioners, while engaged in the hearing, repeatedly drank, BELLOWS, J., said,—"We are constrained to regard it as an abuse that ought to find no countenance in courts of justice  *  * .  We cannot stop to inquire as to its precise effect.   *  *  If such practices were to be tolerated, we cannot fail to see that great injustice might sometimes be the result ;—and as, from the nature of the case, it would generally be impossible to measure the extent of their influence, no other course is open to us but to discountenance wholly the practice."

If, then, the court will not look with any indulgence upon the use of spirituous liquors as a beverage by juries while deliberating upon a verdict, or upon the furnishing of them by a party to county commissioners for like use at a hearing, ought the court to look with any greater indulgence upon the furnishing of them by a party to referees whom the parties have selected to settle their disputes ? There does not seem to be any reason why, ordinarily, a different rule should be observed. Juries are under the immediate control of the court, in the court-room : they have no duties to perform until they retire to consult upon their verdict, except to listen to such evidence and arguments as the court may receive. The commissioners, although chosen by the people, nevertheless act under authority from the court in the consideration of petitions in relation to highways ; and for the propriety of their action the court feel, in some degree, responsible. The same is true in regard to referees. This court has " general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses—Gen. Stats., ch. 189, sec. 1 ; and there can be no reason why the court should refuse to rebuke the conduct of referees by setting aside their report for such abuses as tend to bring reproach upon the cause of justice. The same degree of strictness may not be practicable in the case of referees or commissioners who may, upon their own judgment, supply themselves with liquor, to be drank while deliberating upon matters referred to them, as in the case of a juror when deliberating upon a verdict; but it is quite a different matter when the liquor is furnished by one of the parties.

In this case, it appears that the liquor was furnished by one Libbey, who is not a party to either of these suits, but who was interested in the establishment of the same range line which the defendants claimed to

be the true line, and he had agreed to submit the dispute, so far as he was concerned, to the decision of the same referees. So far as the facts reported show, neither of the three defendants of record had anything to do with furnishing the liquor, and do not seem to be any more responsible for it than the plaintiffs. There is nothing to show that they assented to the use of it, any more than the plaintiffs did : it was drank in the presence and with the knowledge of both parties, and without objection from either. It does not appear, from the case sent up, that either of the plaintiffs or defendants partook of it.

Here is a case presented, then, where two of the referees were indiscreet enough to partake of liquor furnished by a person interested in the decision of the question submitted to them for determination, upon the invitation, evidently jocosely made, but which he understood differently. Neither party to the record appears in any way responsible for this. Did the parties, by their silence, and by allowing the hearing to proceed, waive the objection, and are they precluded from now interposing it as a reason why the report should not be accepted ? In the *Newport Highway, supra,* the agent of the petitioners had furnished the commissioners during the hearing with intoxicating liquors, of which they partook repeatedly in the presence of the counsel for the town, who declined to partake. BELLOWS, J., in commenting on this, says,—" It is true that it was openly done, and that the counsel of the other party made no objection. In some cases the silence of counsel upon the subject would justly be regarded as a waiver of the exception; but considering the delicate nature of the objection, and the reason to fear that the urging of it would give offence to the commissioners, we are not disposed to regard it as waived in this instance. The counsel for the town, indeed, seems to have declined to partake with the commissioners, and in this way exhibited what might well be regarded as his dissent from the proceeding. Had he gone further, and made an explicit objection, he might have had reason to fear the arousing of a feeling more prejudicial to his client than any use that would be likely to be made of the liquor "—p. 435. In that case one of the parties was exclusively in fault. Whatever of reproach attached to the transaction was the direct result of the reprehensible act of the petitioners through their agent. But in this case neither party to the record is shown to have participated in the abuse complained of, or to be in any way responsible for the same. As they had full knowledge of it, and made no objection to it, but chose, each of them, to proceed with the hearing, and took each his chance of a favorable award, I think they must now be regarded as having waived the objection, and they cannot be heard to set it up. This hearing took place, it is said, in the open air, in the back woods of Bethlehem, occupying a period of four or five days, without the presence or assistance of counsel, and was no doubt intended to afford all the parties the fullest and freest opportunity to lay their respective claims before the referees, untrammelled by technical rules. Unlike the cases cited, where verdicts were set aside for the use of liquor in the jury-room, these parties knew of the use of

liquor by the referees, and no objection was made then, or afterwards, until the award was presented in court for judgment. It is possible the plaintiffs may have refrained from objecting at the time because of the delicate nature of the objection ; but I think, under such circumstances as are disclosed in this case, it was their duty to these defendants, who were innocent of the fault of which the plaintiffs complain, to have made known their objection at the time, so as to have saved them the trouble and expense of a further hearing. If the defendants had been the offending party, the case would resemble the *Newport Highway,* where it might well be held that no such duty was owing to a party who was guilty of such reprehensible conduct.

The plaintiffs, under these circumstances, ought not to be permitted to lie by and take their chance of obtaining a favorable award, and then, when disappointed in the result, be heard to interpose an objection which they might have made at an early stage in the hearing. And this result does not conflict with the rule laid down in *State* v. *Bullard* and *Leighton* v. *Sargent, supra,* where the bad conduct for which the verdicts were set aside took place in the jury-room, out of the presence and without the knowledge or assent of the parties, and the party, upon whose motion the verdict was set aside, interposed the objection as soon as the improper conduct of the jurors was brought to his knowledge. He could not therefore be said to have assented to it, or to have waived the objection by not making it before he had knowledge of it. As to Libbey, the plaintiffs might at any time, before the award was published, have revoked the submission, but did not choose to do so.

As the result of these views, it follows that the defendants are entitled to judgment upon the report.

CUSHING, C. J. In all those cases in which the government undertakes to provide tribunals for the settlement of disputed facts, and the adjustment of controversies, it is undoubtedly the duty of the government to see to it that such tribunals should be as pure and free from objection as the lot of humanity will permit. It needs little experience in affairs and little knowledge of humanity to make one aware of the great danger which must arise in the administration of justice, if parties should be permitted to conciliate the good-will or awaken the prejudices of the triers by administering in any way to the indulgence of their appetites. Any man who ever was called upon in the course of his business to determine questions in regard to disputed matters, and who has striven with honest purpose to be honest, and to clear his mind from all undue bias and prejudice, must be aware of the extreme difficulty of the undertaking, and must be aware how small matters, cunningly insinuated, lend an almost imperceptible bias to the judgment. It is probable that there are few people who have not, some time or other, witnessed the effect of a very small amount of alcoholic stimulant adroitly administered. Of course, the amount of effect produced in this way can never be known or guarded against. While one man may have the power of swallowing an inordinate amount of strong

drink without any perceptible effect,—excepting, perhaps, brightening his intellect and sharpening his perceptions,—a very small amount of the same stimulus may utterly upset the judgment and the reasoning power of another. The only provision for absolute safety must be found in entire abstinence. The rule has long been applied in the case of juries, and our court has held it necessary to enforce the same rule in regard to tribunals appointed by public authority for the settlement of controversies. The cases in our own court, which have been cited by my brother SMITH, amply establish the rule, and the discussions in those cases place it on the most solid basis of good sense and sound reason.

I apprehend, however, that the rule is and ought to be different in a case like the one before us. The parties here chose their own tribunal. They conducted the hearing without the intervention of counsel. I understand from the briefs, that the examination of the disputed lines was one involving very considerable labor, much exposure to inclement weather, and a great deal of that exposure which many people very sincerely believe necessitates the use of ardent spirits. What was taken appears to have been used openly, in the presence of everybody, with the consent if not with the approbation of the parties, and without a suspicion of any undue excitement occasioned by it. I have no doubt that it was done at the time with the full assent of the parties, and that it never was thought of as a matter objectionable until it occurred to the more delicate sense of propriety aroused in the party by dissatisfaction with the report. While, therefore, if this were a tribunal imposed upon the parties by public authority, I should hold that even so slight an indecorum would be a fatal objection to the report, I cannot think it right to interfere with this tribunal, except upon evidence tending to show that the indecorum has occasioned some failure of justice.

LADD, J. As I understand the case, the controversy between the plaintiffs and Libbey was not submitted under a rule of court, but by agreement; and as to him and the other parties situated as he was, the plaintiffs might have revoked the submission. *Dexter* v. *Young*, 40 N. H. 130 ; Morse on Arb. and Awd. 230, *et seq.* The brandy was furnished openly, and what was drank was drank openly, while all the parties and referees were together taking a luncheon in the woods, and nobody was intoxicated. I think the failure of the plaintiffs to revoke the submission with Libbey and the other defendants situated as he was, and their going on with the hearing after the liquor was drank, and taking the chance of an award in their favor, cannot fairly be regarded as anything less than a waiver of this irregularity as to him.

As to those defendants who entered into the rule of court, the plaintiffs could not revoke directly ; but there was a remedy equally effectual open to them. They might have declined to proceed with the hearing, and applied to the court to rescind the rule. *Dexter* v. *Young*, 40

N. H. 130. I think the case is clearly distinguishable from *Newport Highway*, 48 N. H. 434, by the fact that county commissioners are public officers, charged by law with the duty of hearing and deciding such matters relating to highways as may be committed to them. The only remedy a party aggrieved by their misconduct has, is to move in court that their report be set aside. Arbitrators, on the other hand, are persons selected and agreed upon by the parties; and, although they may act under a rule of court, there is no reason why a party should proceed with a hearing before them after he has become aware of such misconduct as ought to disqualify them to act. The court, for reasonable cause, would rescind the rule.

There is no pretence here that the liquor was furnished with a view to influence the decision of the referees. There was no secrecy or concealment. The idea of having it did not originate with Libbey, or any interested party, but came from one of the referees. I certainly should not be inclined to relax the rule which requires abstinence from the use of spirituous liquors as a beverage, by a jury or other tribunal, while engaged in the trial of a cause. But it seems to me it would be carrying the rule to a very great and unreasonable extremity of rigor to set aside this award under the circumstances shown. In order to give it that effect, we must hold, for aught I can see, that if a referee, while a cause is on trial before him, should drink any intoxicating liquor, no matter how obtained by him, no matter even if furnished by the party against whom the award is made, and drank without concealment in the presence of all parties, such award must for that reason be set aside.

It appears that the bottle of brandy was passed round. Whether the plaintiffs drank does not appear; but they were present, and made no objection. Suppose they had privately said to one another, " This is enough to destroy the award if it should happen to be against us; but we will go on and allow all the expense of a full hearing to be incurred. Perhaps the award may be in our favor;—if so, we can avail ourselves of it; if not, we can get rid of it by showing this circumstance to the court, and the defendants will have to pay not only all the expense incurred by themselves, but our taxable costs." Suppose such a conversation were shown to have occurred between the plaintiffs, at the time of the dinner in the woods: could a court look with much favor upon an application to set aside an award against them for that cause, made in pursuance of such deliberate plan? I think not. I cannot but think the plaintiffs, having full knowledge of all the facts, knowing exactly the extent of the misconduct of the referees, were called upon to do or say something. It seems to fall little short of an agreement that the award should not for this cause be attacked. If their delicacy, or fear that they might prejudice their cause with the referees by objecting, deterred them from interfering to prevent the use of the liquor when they saw what was going on, and that two of the referees had partaken of the liquor which one of them had required Libbey to furnish, they might have notified the other party and the referees

that they considered the misconduct of such a character as to disqualify the referees, and that, if a report should be made under the circumstances, they should move the court to set it aside. This would have been the fair way, and, under the circumstances, I think it was no more than they were bound to do. They did not do this, but acquiesced in what was done, and went on with the hearing.

For these reasons I am of opinion that the exception should be overruled, and that there should be

*Judgment on the report for the defendants.*